## State of Louisiana *v.* James Costello.

It is good ground of challenge in a capital case that the juror has conscientious scruples against capital punishment.

The court has a right to discharge the jury in a capital case, when such discharge is of evident necessity; and by necessity is not meant that which is physical only, but it has application to cases of moral necessity, as where the ends of justice would of necessity be frustrated, or where it arises from the impossibility of proceeding with the case, without producing evils which ought not to be sustained.

The jury empànnelled and sworn to try the prisoner on an indictment for murder, before the indictment was heard or evidence received, was, on the suggestion of prisoner's counsel, and with the written consent of the prisoner, allowed to separate—the District Attorney reserving his right, with the consent of prisoner's counsel, of making his objection the next day, should he think it important to do so, and to move for the discharge of the jury. On the next day the District Attorney, considering the separation of the jury illegal, moved for the discharge of the jury, which was accordingly ordered. Another jury was subsequently empannelled for the trial of the prisoner, when his counsel filed a plea in bar, alleging that having been once put in jeopardy of his life, he could not be tried by a different and distinct jury. There was a verdict of guilty. On appeal— *Held :* the separation of the jury, under the jurisprudence of this State, would have vitiated the verdict they might have rendered. The motion to discharge the jury was made in good faith; the discharge of the jury was without prejudice to the prisoner's rights; the prisoner stood before the second jury with every advantage he enjoyed when the first jury was empannelled. The conviction was valid.

APPEAL from the First District Court of New Orleans, *Robertson*, J.
*Morse*, Attorney General, and *Tappan*, District Attorney. *Field* and *M. A. Frazer*, for appellant.

Lea, J. *James Costello* having been convicted of the murder of *John Dunn* by the verdict of a jury, without qualification, is appellant from a sentence of death rendered in accordance therewith.

The grounds upon which the appellant claims a reversal of the judgment are embodied partly in two bills of exceptions, from the first of which it appears that "after the jury had been empannelled and sworn, and at a late hour in the afternoon, and before any testimony had been offered, and before the jury had heard the indictment read to them, and by the written consent of the defendant, given in open court, as well as the consent of their counsel, given in open court at the same time, the jury were discharged until the next morning, at 10 o'clock, and were permitted to separate; and on the next morning, after the jury had appeared in court and answered to their names, the District Attorney moved the court to discharge the jury from the further consideration of the cause, upon the ground and for the reason that the separation of the jury, after they were sworn, was error, and that any verdict they might render against the defendant would be a nullity', which motion of the District Attorney the court sustained and discharged the jury from the further consideration of the case, and ordered another jury to be called to try the defendant," to which action of the court the defendant, by his counsel, reserved his bill of exceptions, which was signed, the court, however, adding that "when the motion was made to allow the jury to separate for the night, the District Attorney stated that while he did not wish to object, he had his doubts as to the legality of the separation, but would consent to it, reserving to himself the right to recede from his position, and to require the discharge of the jury when brought into court the next day, in case he should, upon further investigation, find that the separation was illegal and would invali-

date the verdict.   One of the counsel representing the accused stated that there
would be no objection to such a course—at least he was so understood by the
court."

By the second bill of exceptions it appears that three jurors were set aside
and excluded from the jury upon the challenge of the District Attorney, on the
ground that they had conscientious scruples against finding a verdict accom-
panied with capital punishment.   This last ground of defence was abandoned in
the argument of the appellant's counsel, and has been too recently decided to
be untenable, in the case of the *State* v. *Melvin,* to require more than a reference
to the decision in that case.

Upon the empannelling of a second jury on the ensuing day, the 30th May, a
plea in bar to the prosecution was filed on his behalf by his counsel, setting
forth that on the 29th May a jury was duly empannelled and sworn to try the
issue joined between him and the State, before which jury, so empannelled and
selected by himself, he was ready and willing to defend himself, and averring
that said jury so empannelled was discharged (although duly qualified and com-
petent to try the cause) against his consent, and without any necessity for so
doing, therefore he avers that having once been placed in jeopardy of his life, he
is not liable to be tried by a different and distinct jury.

The matters of defence set up in this plea present the same legal question as
are contained in the first bill of exceptions:

1st.  Did the court err in discharging the first jury?

2d.  If there was no error in discharging the first jury, have the rights of the
prisoner been prejudiced in any manner by the action of the court?

It is scarcely necessary to discuss the question whether, upon the mere em-
pannelling of a jury, a prisoner can be said to have been put in jeopardy of life
or limb, before a word of testimony has been heard against him, and before the
jury have received any information concerning the charge made against him by
a reading of the indictment.

It may be conceded that in criminal proceedings nothing should be done within
the discretion of the court to the prejudice of the prisoner, and that if in the dis-
missal of a jury without the consent of the prisoner, he has been deprived of any
legal right, or error has been committed to his prejudice, so that he cannot stand
before a second jury with every legal advantage he possessed when the first
jury was dismissed, then it will be considered that such dismissal is equivalent
to an acquittal, and that the accused cannot be called upon to answer to the
charge before another jury; but we cannot recognize the doctrine that it is an
absolute right of the prisoner to be tried by the first jury which is empannelled.
His right certainly is that he shall be tried by a jury legally empannelled, and
"when the jury have been charged with the trial of a case, the absolute right of
the Attorney General to enter a *nolle prosequi* is suspended, or at least qualified,
and cannot be exercised against the consent of the court, which will in no case
grant it if the defence appears ample, or if the motion appears not to be in good
faith, or to promote the ends of justice."   See the *State* v. *Hornsby,* 8 R. 589.

It was formerly held in England that a jury sworn and charged by the court
in cases affecting life or member could not be discharged, and this doctrine ap-
pears to have received the sanction of Mr. Justice Blackstone to this extent, that
"when the evidence on both sides is closed, and indeed when any evidence hath
been given, the jury cannot be discharged, unless in cases of evident necessity,
till they have given in their verdict."   See 4 Black. 361.   And in former times

the jury were kept without meat or drink, fire or candle, until they should agree <span style="float:right">STATE<br>*v.*<br>COSTELLO.</span> upon a verdict, a coercion with reference to which it has been justly remarked, that though effectual in securing a verdict, " it may be doubted whether a verdict so obtained would do any honor to the administration of justice."

These doctrines have received a thorough re-examination as applicable to the criminal jurisprudence of this country, and though there has been some conflict of opinion, we think the weight of reason and authority is in favor of the right of the court to discharge a jury in cases of evident necessity; and by necessity is not meant that which is physical only, but it has application to cases of moral necessity, as where the ends of justice would of necessity be frustrated " or where it arises from the impossibility of proceeding with the case without producing evils which ought not to be sustained." Wheaton's American Criminal Law, p. 210.

Mr. Justice Kent lays down the proposition, as borrowed from Sir W. Foster, " that it is impossible to fix upon any single rule which can be made to govern the infinite variety of cases that may come under the general question touching the power of the court to discharge juries sworn and charged in criminal cases." " Every question of this kind," says the same writer, " must rest with the court under all the particular or peculiar circumstances of the case. There is no alternative. Either the court must determine when it is requisite to discharge, or the rule must be inflexible, that after the jury are once sworn and charged, no other jury can, in any event, be sworn and charged in the same cause. The moment cases of necessity are admitted to form exceptions, that moment a door is opened to the discretion of the court to judge of that necessity and to determine what combination of circumstances will create one." See *The People* v. *Olcott*, 2 Johnson's Cases, 300.

Mr. Justice Story affirms the same doctrine in the following language: " We think that in all cases of this nature the law has invested courts of justice with the authority to discharge a jury from giving any verdict whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject, and it is impossible to define all the circumstances which would render it proper to interfere." See *United States* v. *Percy*, 9 Wheaton.

The jurisprudence of our own State is in conformity with these views. See *State* v. *Brown*, *State* v. *Hornsby*, and *State* v. *Ferguson*, 8th Rob. In the last named case, as in the case at bar, it was urged in behalf of the prisoner that though the right of the court to discharge a jury might be conceded in certain excepted cases, yet that right was to be confined and restricted to cases of absolute necessity. " This concession," says the court, "reduces the matter to the simple question, *necessitas vel non*. Of the existence of the necessity the court must necessarily be the judge; an authority to be exercised in *all*, particularly in capital cases, within the limits of a sound legal discretion." " The amount of fancied evils, flowing as is alleged from the concession of such power to courts of justice, would be more than compensated by the possible, probable, nay positive infliction of wrong upon the unhappy class of persons themselves for whose benefit and protection the rejection of the power is now invoked."

We deem it unnecessary further to illustrate this question by a reference to authorities. We think the only question to be determined is, whether under the peculiar circumstances of the case there was a proper exercise of the discretion

of the court in discharging the first jury? Whether the ends of public justice required it; whether the prisoner was prejudiced thereby, or was deprived of any legal advantage by their discharge?

It is to be observed that the separation of the jury on the evening of the 29th May was granted upon the suggestion, and on the motion to that effect, of the counsel for the accused, who, for the purpose of giving it effect, filed the written consent of the accused thereto with that of his counsel. It appears that the District Attorney suggested his doubts as to the legality of the proceeding, and reserved his right to make his objections on the following day, in which course the counsel for the accused, as they were understood by the court, expressed their concurrence. It is manifest, therefore, that the act which appears to have been considered as an impediment to further proceedings before the first jury, was not one over which the defendant had no control, or which he could not prevent; on the contrary, it was one which was adopted at his suggestion, upon his own motion, and granted under reservation of legal objections, to be urged if it should be considered necessary on the part of the State.

The jury having separated, as above stated, the next question is, whether it was a proper exercise of the discretion of the court, under the circumstances, before the trial began, before the jury were charged with the case, and before the indictment was read or any testimony was heard, to discharge the jury and cause a new one to be sworn in. As the case then stood, equal justice could not be done between the State and the prisoner. Under the jurisprudence of the State, it was a settled rule of practice in criminal cases, "that the separation of a jury, after being sworn, without being in charge of a sworn officer, is fatal to the regularity of the proceedings in a capital case."

We concur in the opinion of Mr. Justice Preston in the case of the *State* v. *Desmond et al.* That we should greatly doubt the propriety of such a rule of practice, were the question an original one in our courts, " but a court organized for the very purpose of establishing uniform principles and practice in criminal matters have so decided." See the *State* v. *Hornsby,* 8 Rob.

Whatever may be the practice, therefore, in other States, we must consider that in this State it is established in accordance with the ruling in the two cases above quoted. It was idle, under the circumstances, to proceed with the case before the first jury, for all the purposes of a criminal prosecution. It was proper, therefore, for the District Attorney to suggest that a new jury should be sworn, as the tribunal which was about to try the prisoner could not bring in an effectual verdict of conviction. It is evident, then, that "the motion was made in good faith, to promote the ends of justice," and without the intention of oppressing the prisoner; and it has not been shown that the defendant did not stand before the second jury with every advantage which he enjoyed when the first jury was empannelled.

The discharge of the first jury, therefore, was without prejudice to his rights. We think, under the circumstance of the case, that it was the duty of the court to discharge the jury. This conclusion disposes of the plea in bar, which is based exclusively upon the alleged error in discharging the first jury. It was properly treated by the court as presenting a question of law exclusively.

Our attention has been directed by the arguments of counsel to the alleged refusal of the court to charge the jury: "That although drunkenness is no excuse for crime, yet if in the consideration of all the circumstances of the case, they believed that the defendant was so much intoxicated as to make himself

incapable of reasoning, and committed the act in the heat of passion, they had the right to reduce the killing to manslaughter."

It appears that the Judge did charge the jury that if they considered that the act had been committed in the heat of passion, they might so reduce their verdict, but it is alleged that he refused to charge them that his being incapable of reasoning, in consequence of intoxication, was sufficient cause for such reduction.

This fact is not made to appear by a bill of exceptions taken to the charge of the court, and we are therefore relieved from the necessity of enquiring into its correctness.

It is ordered that the judgment be affirmed.