## No. 13,772.

### STATE OF LOUISIANA VS. JULES VEILLON.

### SYLLABUS.

1. A remark by the judge, presiding upon a trial for murder, referring to the calling back, for the purposes of cross examination by counsel for defendant, of a juror who had been examined by the State on his *voir dire* and told to stand aside, that "it was a useless consumption of time", although, perhaps, better left unmade, does not call for a reversal of the verdict, unless there is good reason to believe that the defendant has been injured. And the same thing may be said with regard to inquiries made by the presiding judge, in the presence of the jury, as to whether the defendant's counsel would waive his objections with regard to the matter of allowing the jurors to leave their fellows, accompanied by an officer, to attend to calls of nature. There is no necessity for consulting counsel for defendant in such cases, and it is better that it should not be done, but having been done, the setting aside of the verdict does not, necessarily, follow.

2. To allow a juror to separate from his fellow jurors, for the purposes, and under the conditions, as stated above, is not such a separation as falls within the technical prohibition of the law, and does not, of itself, authorize any presumption of injury to the accused.

3. Where the jury, whilst trying the accused, charged with murder, and who is convicted of manslaughter, is taken by the officer in charge to the post-office, in order that one of the jurors may obtain stamps, and, whilst there, one of them is handed a newspaper, which has come through the mail, in a wrapper, but it does not appear that any of the jurors are spoken to by outside persons, and it is shown by the testimony of the juror in question that the paper received by him was a daily from a distant city, and contained no reference to the cause on trial, and there is nothing to show injury to the accused, the facts of the jury's going to the post-office, and of the delivery of the paper to the juror, although irregularities which are to be deprecated, do not demand the reversal of the verdict.

APPEAL from the Sixteenth Judicial District, Parish of St. Landry —*Lewis, J.*

*Walter Guion,* Attorney General, and *R. Lee Garland,* District Attorney (*Lewis Guion,* of counsel), for Plaintiff, Appellee.

*E. B. Dubuisson,* for Defendant, Appellant.

The opinion of the court was delivered by

MONROE, J. The defendant, having been tried for murder, was convicted of manslaughter and sentenced to fine and imprisonment at hard labor. His case is presented to this court by means of two bills of exception and a motion for new trial. From bill No. 1, it appears that two jurors, being examined upon their *voir dire,* stated, "that they had formed fixed opinions, which would require strong evidence to change", and that they were challenged for cause, by the State. The presiding judge, thereupon, remarked to the defendant's counsel, "that he did not suppose any further examination would be necessary, and told the jurors to stand aside." Defendant's counsel did not, at once, make any objection to this, or offer to cross examine the jurors, who, accordingly, withdrew. Immediately, thereafter, the counsel demanded the right to cross-examine, and the judge, in according it, remarked that "it was a useless consumption of the time of the court", to which remark the bill was reserved as being prejudicial to the defence. When the jurors were recalled, it appears that the State withdrew its challenge, and that, after cross-examination, the defence accepted one of them, and he served upon the jury by which the defendant was convicted. There is some little difference between the statements of the counsel and of the judge, as contained in this bill, but it is not important, and the version

as given above is that of the judge to whom, in such matters, the court gives the preference.

We think that the remark complained of had, perhaps, better have been left unmade; but there is nothing in the record which suggests that either its purpose or its effect was to prejudice the defendant's case. It, therefore, affords no ground for the relief sought.

Bill No. 2, was taken to the overruling of a motion for new trial in which the following points were presented, to-wit:

1.   That the verdict was contrary to the law and evidence.

2.   The point covered by the bill No. 1 already considered.

3.   Because of certain irregularities in the trial which, it is alleged, operated to the injury of the accused, viz: (a)—"After the jury was " empanelled, and whilst the court was temporarily at recess, the officers " having them (the jury) in charge permitted them to separate, without " the permission of the court, leaving ten of them in their seats in the " jury box, and taking two of them to the water closets in court house " square, about forty yards from the rear of the court house, the court " room and the court house being, at the time, crowded with people; " (b)—that when the officer having the said two jurors in charge re- " turned with them, the court was called to order, and the said officer " reprimanded in the presence of the jury; and, still in presence of the " jury, the court called upon the attorney for the defendant either to " waive their legal rights, because of the separation aforesaid, or to " consent to the discharge of the jury; that the attorney announced that " they would do neither, but would insist upon their rights in the prem- " ises; that thereupon on motion of the district attorney, the trial was " proceeded with: (B)—During the adjournment of the court, the offi- " cers having them (the jury) in charge, permitted them to have access " to law books and papers; to read newspapers; to go to the postoffice " in his company, and to call for, receive, and read, their mail: (C)— " After the separation of the jury, as aforesaid, several of them being " troubled with loose bowels, and for that reason having frequently to " visit the closets situated as aforesaid, the court on such occasions " would request the attorney of the defendant, in the presence of the " jury, to consent to allow such jurors to go to such closets, separate and " apart from their fellows, and, upon the refusal of said counsel to " comply with said request, and their protest against being asked to do " so, the court would order the whole panel to go to said closets together; " that this was calculated to prejudice the jury against the defendant,

" and that it did so is attested by the fact that immediately after the
" trial, one of said jurors publicly declared that one of their number
" had been coerced by his fellows to render a verdict of guilty that was
" rendered in this case, and that he, the declarant, had agreed to convict
" the defendant, on general principles, and without regard to the evi-
" dence."

The separation complained of affords no serious ground of complaint
and creates no presumption of prejudice to the accused. The jurors
who separated from the others, in order to visit the closets, were accom-
panied by an officer, who testifies that they were approached by no one
and spoke to no one, whilst the other jurors remained in their seats in
the presence of the court.

" The separation of a juror from his fellows in the jury room by go-
" ing thence is not a ground for relief, if it is shown that the juror was
" not subjected to improper influences." * * * " The presumption
" will not be indulged that a separated juror was tampered with in the
" immediate presence of the officer having him in charge." Ency. of
Pl. & Pr., Vol. 12, pp. 570-2; State vs. Turner and Reid, 25 Ann. 573;
State vs. Johnson, 30 Ann. 921; State vs. Scanlan, 52 Ann. 2058.

Concerning the visit of the jury to the postoffice, the evidence shows
that they were taken there by the sheriff in charge at the request of one
of the jurors, in order that he might obtain some postage stamps; that
whilst there, a young lady clerk gave to another of the jurors a news-
paper, in a wrapper, which she took from his box, or the box of some
one whom he knew, and which the juror testifies was a New Orleans
evening paper that contained no reference to the case on trial. He
also swears that there was nothing else within the wrapper, and that he
received nothing else.

It further appears that, other than said paper, the jurors received no
mail, for the reason that the officer declined to allow them to do so, the
delivery of the paper having, probably, taken place before his attention
was attracted. It does not appear from the testimony which was taken
that the jurors upon the occasion in question spoke to any one, or were
spoken to; and, whilst the indulgence was rather unusual, and is to be
deprecated, we find absolutely no reason to suppose that it resulted in
any injury to the defendant.

The charge that the jury was allowed law books and papers and news-
papers, is supported by the testimony taken on the trial of the rule, only
to the extent as already mentioned, and by the following statement of

the defendant's counsel, to-wit: "On the last day of trial I came into "court just after the doors were opened. The jury were in the court "room, in charge of an officer. As I, and several others, walked in, "they proceeded toward the jury box, and one of them picked up a "newspaper, lying on a lawyer's table, glanced at it and dropped it, in "the manner of one who had read every line in it, including advertise- "ments. The paper appeared to be pretty well worn." The counsel further testifies that he took the paper, to which he refers, to have been a New Orleans paper, and that he did not, during the trial, see anything, in any paper, concerning said trial. And in this statement he is corroborated by the judge, who testifies to having read one of the New Orleans papers, and the local papers, which latter, it appears, were published weekly, and, as we infer, did not come out during the trial. We conclude, therefore, that no prejudice to the defendant is shown in connection with this charge.

The remaining ground of complaint is that which is based upon the inquiries made by the trial judge, of the counsel for defendant, as to whether he would waive his objections to the separation of the jury to the extent necessary for those who needed to do so to go to the closets. It is certainly to be regretted that such inquiries were made, as the counsel who is defending a person on trial for his life ought not to be asked by the court, in the presence of the jury, to waive any right, or supposed right pertaining to his client, when his refusal might have a tendency to put him in an attitude of antagonism to the jurors. But a careful consideration of the case, as presented, fails to satisfy us that the defendant sustained any such injury by reason of the matters complained of as would justify the reversal of the verdict. The defendant's counsel, himself, states, that the last time, or the last two times, that the jurors asked to go to the closet, the judge allowed them to go, accompanied by an officer, apart from the other jurors, without consulting the counsel for the defendant. This, we think, would have been the better course to have pursued, originally, but the fact that the course which at this distance seems the best is not always pursued in the trial of a case does not, of necessity, imply that the verdict and judgment reached are to be set aside. There must be satisfactory reason for believing that injury has resulted to the party complaining. The following language, used by this court many years ago, and since repeated, may be applied in the instant case, to-wit:

"It is the duty of the courts and of their officers, to guard, as far as

"possible against all irregularities in their proceedings. Still, they "will occur, because tribunals of justice, like all human institutions, "are imperfect. Some irregularities are of such gross character that "a prejudicial effect may be presumed. We do not think the one com-"plained of was* of that character. State vs. Bradley, 6 Ann. 560; "State vs. Harris, 34 Ann. 120."

Judgment affirmed.

PROVOSTY, J., takes no part.