. (38 South. 28.)

No. 15,494.

## STATE v. CRAIGHEAD.

(Feb. 13, 1905.)

CRIMINAL LAW—TRIAL—SEPARATION OF JURORS.

1. When, upon a trial for murder, five jurors have been accepted and sworn, and, the hour of adjournment having arrived, the trial judge directs that such jurors, together with seven others who are in the box, but who are unaccepted and unsworn, shall be taken in charge by the sheriff and kept together until the convening of the court upon the following day, and the defendant thereupon objects to the involuntary association of the sworn with the unsworn jurors, the overruling of the objection is reversible error.

2. In capital cases the jurors should not be permitted to separate after they have been

sworn, either before the jury is completed or afterwards, whether with or without the consent of the accused, nor should they be exposed to association or contact with persons other than the officers of the court charged with their custody.

(Syllabus by the Court.)

Appeal from Third Judicial Court, Parish of Claiborne; Benjamin P. Edwards, Judge.

Dick Craighead was convicted of murder, and appeals. Reversed.

William Chappelle Barnette and Dorman & Reynolds, for appellant. Walter Guion, Atty. Gen., and John C. Theus, Dist. Atty. (Enos Howard McClendon and Lewis Guion, of counsel), for the State.

MONROE, J. The defendant in this case, having been separately indicted for the murders of two persons, the prosecutions were by consent consolidated, and he was thereupon tried, convicted, and sentenced. The case presented to this court is to be found in two bills of exceptions, the first of which sets forth that at the close of the first day's trial the judge instructed the sheriff "to keep five jurymen, who had been accepted and sworn, and seven men, who had been called into the box, but who had not been examined or sworn, together," during the night and until the commencement of the trial the next morning, to which instruction of the court the defendant, by counsel, excepted, for the reason that it would be prejudicial to him for seven men who had not been either accepted or sworn, and who might never be accepted on the jury, to be shut up and left in communication with the five jurymen who had been accepted and sworn, which application and exception the court overruled, for reasons:

"By the District Attorney: No request was made by the accused or his counsel that the jurors who had not been passed on be separated from those already accepted and sworn, and no objection was made until the court announced that the panel was placed in charge of the sheriff for the night, after having been properly instructed, at which time counsel for the ac-

cused, without alleging any prejudice or injury, reserved a bill of exceptions.

"By the Court: The district attorney has stated the fact correctly. Defendant did not ask that the five accepted jurors be separated from those not accepted. The court placed the twelve jurors who were in the box at the hour of adjournment in charge of the sheriff, and instructed them not to talk among themselves about the case, or suffer any one else to talk with them. There was no injury done to the defendant, and he did not claim any at the time, and does not allege any in his bill of exceptions. (To which ruling of the court the defendant, by counsel, excepts)," etc.

In State v. Hornsby, 8 Rob. 554, 41 Am. Dec. 305, it was alleged, in a motion in arrest of judgment, that the jury had been allowed to separate during the trial, and go to their houses and business. In passing upon the question on appeal, the Court of Errors, then existing in this state, said:

"This ground, not being apparent upon the record when the motion was made, offered no cause to arrest the judgment, but the fact that the jury did separate being shown, to this court, now, by the transcript filed and proceedings had in the lower court, will be examined as if offered on the motion for new trial, which was the proper course."

The court then refers to the then somewhat unsettled condition of the jurisprudence, and proceeds as follows:

"The point appearing thus unsettled and sub lite, this court feels authorized to give a preference, and to adopt that rule which seems to offer the greatest security to the accused, and at the same time trenches in no wise upon any right necessary to insure the due and proper execution of the law. In capital cases the jury should not be permitted to separate after they have been sworn, either with or without the consent of the prisoner. * * * This precaution is necessary to protect the accused from any undue influence which may be exercised upon the members of the jury, even without their knowledge. Improper impressions may and will be made upon their minds by artful and designing men, of which they may be perfectly unconscious; neither can they shut their eyes to the expression of popular opinion. * * * In cases not capital, courts may, in their discretion, permit the jury to disperse until they have received the charge of the court, but they should not be permitted to separate after the charge has been given. In these cases misconduct on the part of the jury will set aside their verdict; in capital cases, upon a separation, misconduct and abuse will always be presumed."

The following are some of the cases in which the rule thus adopted has been affirmed, to wit: State v. Desmond, 5 La. Ann. 398; State v. Costello, 11 La. Ann. 283; State v. Populus, 12 La. Ann. 710; State v. Evans, 21 La. Ann. 321; State v. Frank, 23 La. Ann. 213; State v. Warren, 43 La. Ann. 828, 9 South. 559; State v. Foster, 45 La. Ann. 1176, 14 South. 180; State v. Moss, 47 La. Ann. 1514, 18 South. 507.

In the case of State v. Costello, supra, it appeared that, before the indictment was heard or evidence received, the jury, with the written consent of the accused, were allowed to separate, the district attorney reserving his right to make objection on the following day; that on the following day the district attorney moved for the discharge of the jury; that, another jury having been thereupon impaneled, the accused alleged, as a plea in bar, that he had been once put in jeopardy, and could not again be tried, which plea was overruled. In affirming the conviction obtained through the second jury, this court held (quoting from the syllabus):

"The separation of the jury, under the jurisprudence of this state, would have vitiated the verdict they might have rendered. The motion to discharge the jury was made in good faith," etc.

In State v. Warren, supra, it appeared that, after the jury had retired to deliberate on their verdict, the sheriff conducted four of them into the yard, leaving the remaining eight jurors in the jury room. This court, referring to those so left, said:

"They were accessible; misconduct is presumed."

In State v. Moss, supra, a somewhat similar separation occurred during the trial, and it was said by this court:

"There were opportunities for members of the jury remaining upstairs to communicate with persons in the court building. The jurors were accessible, and misconduct is presumed."

In Cyc. vol. 12, p. 671, it is said:

"In all trials for felony it was necessary at common law to keep the jury together, in charge of an officer, and not to permit them to separate, from the time of their being impaneled and sworn. In most jurisdictions this rule still applies, in the absence of a statute, in the case of capital felonies."

And cases are cited from Colorado, Florida, Illinois, Indiana, Louisiana, Michigan, Mississippi, Missouri, West Virginia, and Wisconsin, as supporting the proposition stated.

In the same volume, at page 672, it is said:

"In many jurisdictions it has been held that, when a rule of practice or statutory provision requires that the jury should be kept together, defendant cannot waive his rights in this respect, particularly in the case of capital felonies, by requesting or consenting to a separation, since defendant ought not to be placed in the position of having to consent, or perhaps. prejudice the jury by withholding consent."

And cases are cited from nine states, including Louisiana, as sustaining the rule stated.

The learned counsel for the state, correctly appreciating the position and obligations of prosecuting officers, assure the court that they would not have the conviction sustained unless it be legal. They are, however, firmly persuaded that it is legal, and submit an argument in its support which will receive our most serious consideration.

They say that, in the motion for new trial filed on behalf of the defendant, no complaint was made with respect to the matter at issue; that an examination of the brief filed by counsel for the defendant will disclose the fact, or admission, that two of the seven unsworn jurors who remained with the five sworn jurors during the night were accepted by the defendant, and sat as members of the jury; and that it appears from the record that, after the jury had been selected, the defendant had not exhausted his. peremptory challenges.

In the leading case in our jurisprudence upon this subject (State v. Hornsby, supra), it is expressly stated by the court that the defendant did not, upon the motion for new trial, complain of injury resulting from the

separation of the jury, and did not offer proof of the separation, but, evidence of that fact having been found in the record, it was held to be sufficient to justify the court in taking action with reference to it.

In the case of State v. Dorsey, 40 La. Ann. 740, 5 South. 26, relied on in this connection, it appeared that after one of the jurors had been sworn, and whilst he was sitting in the jury box, in the immediate presence of the court, a third person approached and engaged him in a whispered conversation, and that, whilst it was observed by one of the defendant's counsel, no objection was made thereto. The court held that there was no misconduct on the part of the juror, since it did not appear that he invited the conversation; and further held that "the counsel had an opportunity of tendering a seasonable objection to further proceeding with the trial before that jury, and did not"; and that the complaint of the accused came with indifferent grace after he had taken the chance of acquittal by the jury as constituted. The view that the juror, though guilty of no apparent misconduct, may, consciously or unconsciously, have been influenced to the prejudice of the accused, does not seem to have been considered. Conceding, for the sake of argument, that it may have been considered, and that the case cited should be held to establish an exception to the rule (laid down and adhered to through a long line of decisions) that a verdict in a capital case will be set aside not only when the jurors have actually been brought in contact with third persons, but when they have been accessible thereto, and the possibility of such contact, to the prejudice of the accused, is shown to have existed, it does not follow that the exception should be so broadened as to include the case now before the court. In the case cited, all that occurred took place in the presence of the court, of the counsel for the accused, and, presumably, of the accused himself, upon whose behalf no ob-

jection was made. The circumstances were therefore such as reasonably to have overcome the presumption of injury which might otherwise have arisen, and the case may be classified with those in which it has been held that, where it affirmatively appears that no prejudice to the accused can have resulted, the mere separation of the jury is an insufficient ground for setting aside the verdict. State v. Johnson, 30 La. Ann. 921; State v. Veillon, 105 La. 411, 29 South. 883; State v. Callian, 109 La. 346, 33 South. 363.

In the case now before the court, when the trial judge directed that five accepted and sworn jurors, and seven persons who had merely been summoned to serve, but who had not been and might never be so accepted and sworn, should be kept together for the night, out of the presence of the court or of any officer of the court, the counsel for the defendant immediately objected, and, his objection having been overruled, reserved his bill of exceptions, which, as we are informed in argument, was presented to and signed by the judge upon the following day.

It is quite true that, so far, the jurors who had been selected were guilty of no misconduct, nor were the other persons who were thus involuntarily associated with them; but, if it is sufficient to justify the setting aside of a verdict that jurors have been accessible to and have been subjected to the possibility of outside influence, a fortiori must the verdict be set aside when it is shown and conceded that the jurors have been thrown with persons from the outside upon terms of such intimacy and freedom as must result from their occupying the same apartment and, possibly, beds, and eating at the same table.

And if it be an established rule of practice in this state, founded upon sufficient and humane reasons, that the accused cannot prejudice his rights by affirmatively consenting to such a method of conducting his trial, how can it be said that he has accom-

plished that result by not consenting thereto, or by failing to reassert, in the motion for new trial, a protest which he had already made when the irregularity complained of was committed? The argument of the learned counsel for the state furnishes no satisfactory answer to these propositions, and none occurs to us. They are in no wise answered by the fact that the accused accepted as jurors two of the seven men who, whilst unaccepted, had associated with the others. If those men had not been improperly confined, as they were, they might have associated with whom they pleased without affecting their eligibility to serve in the case then pending or in any other that might have been called. Nor does it affect the issue here presented that the defendant went to trial without having exhausted his peremptory challenges. The point is that five men who had been accepted and sworn as jurors to try the defendant were thereafter subjected to outside influences by being thrown in the most intimate association with others who had not been, and who were not afterwards, so accepted and sworn. That the trial judge might have discharged the jury upon the morning of the day following that upon which the jurors, with the others, were committed to the custody of the sheriff, is quite likely. It was so held in State v. Costello, supra, but the reason given by the court for so holding in that case was "that the separation of the jurors, under the jurisprudence of this state, would have vitiated the verdict they might have rendered," and, if the verdict in that case would have been vitiated, why is the verdict in this case not vitiated?

We are referred to the case of Tooel v. Com., 11 Leigh (Va.) 714, which the counsel report in their brief, practically in full, and in which it was held, upon the authority, apparently, of the ruling made by Chief Justice Marshall in the Burr trial, that, "in impaneling a jury for trial of an indictment for felony, there is no necessity to keep jurymen, who have been elected and sworn, together, and separate from other persons, under charge of the sheriff, until the whole number shall be elected and sworn." It does not, however, appear that the defendant in the case cited was prosecuted for a capital offense, and it is quite certain that the doctrine stated has never been applied in such a prosecution in this state. On the contrary, the question of the separation of the jury has been dealt with from the same basis of reason and propriety as well where the jury was partially as where it was wholly completed. Thus, in State v. Forney, 24 La. Ann. 192, the defendant being charged with a capital offense, it appeared that, before the jury had been completed, one of the nine jurors who had been sworn left the courtroom and went into an adjacent alley for a necessary purpose, and the court, in considering whether the separation was such as should vitiate the verdict, said:

"He was not out of view of the sheriff more than ten seconds. He spoke to no one. The sheriff observed that there was no one else in the alley. He returned to his seat before the trial began. In such a case, we think it would be pushing technicality too far to say that the verdict should be set aside, for there is no room for any reasonable hypothesis of misconduct."

The court then refers to the cases of Hornsby and others (heretofore mentioned), and notes the fact that in each of those cases there had been a real separation after the trial had begun and evidence had been taken, and that there "was a strong, and perhaps conclusive, presumption of misconduct."

In State v. Crosby et al., 4 La. Ann. 434, the offenses charged not being capital, the jurors who were accepted and sworn were permitted to disperse upon the adjournment of the court, and before the completion of the jury, and a reversal of the judgment was asked on that ground, but the court said:

"It is only in capital cases that jurors are not permitted to separate after being sworn."

We are further referred by the learned counsel for the state to the capital case of Taylor v. State, 11 Lea (Tenn.) 708, in which it appeared that a juror who had been "selected" was discharged by the court before the jury had been sworn, and it was held that there was no error in permitting the other jurors, who had associated with the discharged juror, to remain on the jury, the defendant having made no objection to their so doing, and it not appearing that he had exhausted his challenges before the jury was completed. In passing upon the question, the court said:

"The defendant did not object to the other jurors because of their association with the incompetent juror, nor ask for their discharge, nor offer to show that anything improper had passed between them and the discharged juror. Upon principle, in the absence of anything else, the mere association of selected jurors with one of their number who had formed and expressed an opinion as to the guilt of the defendant would no more render them incompetent than such association previous to the trial. And no decision has been cited holding otherwise. * * * A juror who separates from his fellows is guilty of a positive violation of his duties, and thereby creates a prima facie case against him, which requires to be met by countervailing testimony. But jurors who remain with the delinquent juror are simply performing their duty, and are not thereby put in fault. The burden was therefore upon the defendant to show improper communications by their associates, or to establish some fact to create a suspicion against them. Until a prima facie case is made out, there is no necessity for explanatory evidence."

"In some jurisdictions a full panel of twelve must be presented for acceptance or rejection, and that number, corresponding to the number of the jury as completed, kept up, so that, after rejection of any of them, there shall be the number of twelve to pass on until a jury is obtained." Ency. of Pl. & Pr. vol. 12, pp. 416, 417.

Where the method thus mentioned obtains, jurors are probably accepted or "selected" until the full number is obtained, when they are all sworn in at once. If, therefore, after a juror has been selected, he is discharged by the court for some reason subsequently discovered, the case is about as it would be if a juror were discharged after the entire jury has been sworn; with this differ-

ence, however, that, so long as the juror is not sworn, he may be challenged peremptorily or for cause, but he cannot ordinarily be so challenged after he is sworn. In this state it has been held more than once that the trial judge may discharge a juror after he has been sworn and before the jury is impaneled (State v. Diskin, 34 La. Ann. 919, 44 Am. Rep. 448; State v. Moncla, 39 La. Ann. 868, 2 South. 814), but it has never been held that the association of such juror disqualifies the others, and it will be time enough to meet that question when it is presented. It is enough to say for the present that in the case relied on by the state the selected and discharged juror had acquired the same status as those with whom he associated, and neither he nor they had been sworn in as jurors; whereas, in the instant case, the trial judge had adopted the method of "keeping the box full," but did not pursue it to the point of keeping the selected jurors unsworn until the whole number required had been obtained, and hence there were five jurors actually sworn in, beyond the reach of challenge, who were housed for the night with seven persons who had not been (including five persons who never were) either selected or sworn as jurors. And the defendant made his objection at the time.

The case cited is not therefore in point, and our conclusion is that the error here complained of is fatal to the verdict.

The statements of the district attorney and of the trial judge, attached to the remaining bill, render it doubtful whether the ground of objection relied on was sufficiently made known, and we therefore, and in view of the fact that the judgment is to be reversed for reasons already given, pretermit consideration of the second bill.

In conclusion, we deem it proper to say that the consolidation of two prosecutions, under separate indictments, for different murders, is an unusual proceeding, and one

which, as it seems to us, might lead to unnecessary complications. In matters of this kind the usual method of procedure is the safest.

For the reasons assigned, it is ordered, adjudged, and decreed that the verdict and judgment appealed from be annulled, avoided, and reversed, and that this case be remanded to be proceeded with according to law.