(64 South. 385.)

No. 20,277.

STATE v. SPEARS.

(Jan. 5, 1914.   Rehearing Denied Feb. 2, 1914.)

(Syllabus by the Court.)

CRIMINAL LAW (§ 854*)—NEW TRIAL—SEPARATION OF JURY—HOMICIDE.

A motion for a new trial, based on an alleged separation of the jury during the progress of the trial, where it is shown by affirmative evidence that the jury were retired under the orders of the court to two rooms in a hotel, where they were kept during the night, six in one room, and six in the other, under and in charge of deputy sheriffs, and that the jury were not tampered with or influenced, and that 'the defendant was not prejudiced thereby, is properly overruled.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2039–2047; Dec. Dig. § 854.*]

Monroe, J., dissenting.

Appeal from Twenty-Fifth Judicial District Court, Parish of St. Helena; R. S. Ellis, Judge.

Robert Spears was convicted of murder without capital punishment, and appeals. Affirmed.

Bankston & Inman and M. J. Allen, all of Amite, for appellant. R. G. Pleasant, Atty. Gen., and W. H. McClendon, Dist. Atty., of Amite (G. A. Gondran, of Donaldsonville, of counsel), for the State.

SOMMERVILLE, J.   Defendant appeals from a verdict of guilty of murder without capital punishment, and from a sentence condemning him to hard labor in the state penitentiary for life.

There are two bills of exceptions found in the record, only one of which is urged in this court. That bill was taken to the ruling of the court refusing the application for a new trial on the ground:

"That during the night the said jury was permitted to separate at their lodging quarters in the town of Greensburg, La., six having slept on the east side of said hotel, and six having slept on the west side, there being an intervening hall, and that two intervening doors were closed, one on each side of said hall, and that same was after the state closed in chief; your mover represents that because of this separation his cause was unlawfully prejudiced, and that by reason of said separation and resultant unlawful prejudice to his cause he is entitled to a new trial on the charge of murder."

The per curiam attached to the bill is:

"There was one jury locked up in the only available sleeping room in the courthouse, that had been charged and were deliberating in the case of State of Louisiana v. Ivy Blue, charged with murder. Greensburg being an interior town, there was no other comfortable or available sleeping quarters; so I instructed the sheriff to secure two adjoining rooms and put two deputies with the jury, one in each room. I am sure there was no outside communication, as the deputies are of unquestionable integrity, and their testimony is in the record. The facts satisfied the jury, as they did me, that the accused was guilty, and I therefore overruled the motion for a new trial."

The evidence shows that on the evening of the first day of the trial, after the state had closed its case, the jurors were retired for the night to two rooms in a hotel in the town, by the order of the court, for the purpose of rest and sleep; these rooms were on the second floor, on opposite sides of a common hall, with a door entering, upon said hall from each room; there were no other doors to said rooms; and the window in each room was some 20 feet from the ground; six men were put in one room under charge of a deputy sheriff, while the six others were put in a separate room under the charge of another deputy sheriff; that the said deputies remained in the rooms, with locked doors; and that there was no communication whatever between the jurors and outsiders; there was no way to get into or out of the rooms except through the hall doors, which were locked; each deputy sheriff went with six jurors into a room at the same time, and out of the same rooms, respectively, at the same time.

Defendant argues, and he quotes from the decision of this court in State v. Hornsby, 8 Rob. 554, 41 Am. Dec. 305, that:

"In capital cases, upon a separation (of the jury), misconduct and abuse will always be presumed."

And he further argues that this court has strictly adhered to this doctrine, and cites many cases in support of his argument.

None of the cases cited present the conditions existing in this case.

In State v. Hornsby, supra, 8 Rob. at page 558, 41 Am. Dec. 305, jurors separated and went to their separate homes and to their businesses. They were necessarily out of the charge of the sheriff, and away from the control of the court. And we there say, under those circumstances:

"The decisions upon this point, both in the United States and in England, have been various and contradictory. In early times, the rule was unbending that the separation of the jury was fatal to their verdict, and, in cases where the court was obliged ex necessitate to adjourn, the jury was placed in charge of a bailiff, who was sworn to keep them together. 6 Durnf. & East, 530. In modern times the vigor of this rule has, in many instances, been relaxed; but the decisions are so contradictory and conflicting that the question may still be fairly considered unsettled. Thus in Virginia the old rule prevails, and a separation of the jury is fatal to their verdict. In North Carolina the decisions are both ways. State v. Garrigues, 2 N. C. 241; State v. Carstaphen, 3 N. C. 238. So in New York, In McLeod's Case, as reported by Gould, page 16, the court directed the sheriff to provide lodgings and places to take their meals for the jury, as it would be necessary to keep them together during the whole of the trial, and to provide them with accommodations as near the court as possible. Graham on New Trials, 91 et seq.; 1 Chitty, 628; Roscoe, Crim. Ev. 178. Aliter in Kentucky. The point appearing thus unsettled and sub lite, this court feels itself authorized to give a preference, and to adopt that rule which seems to offer the greatest security to the accused, and, at the same time, trenches in no wise upon any right necessary to insure the due and proper execution of the law.

"In capital cases, the jury should not be permitted to separate after they have been sworn, either with or without the consent of the prisoner. This vigor, which the court conceives to have been the universal practice in the country parishes, can lead to no bad consequences. This precaution is necessary to protect the accused from any undue influence which may be exercised upon the members of the jury, even without their knowledge, and cannot be tortured into a disparagement of their integrity. Improper impressions may and will be made upon their minds by artful and designing men, of which they may be perfectly unconscious; neither can they shut their ears to the expression of popular opinion; and as well might the administration of the juror's oath be considered as conveying a doubt of his integrity as this temporary seclusion from intercourse with the community at large. In cases not capital, courts may, in their discretion, permit the jury to disperse until after they have received the charge of the court; but they should not be permitted to separate after the charge has been given. In these cases, misconduct on the part of the jury will set aside their verdict. In capital cases, upon a separation, misconduct and abuse will always be presumed."

That which we there stated to be the law must be read in connection with the facts of that case. There had been a real separation of the jurors. They had been permitted to go to their homes and to their businesses during the course of the trial, unattended by deputy sheriffs.

In the present case, the jurors, as we have seen, were not out of the charge of the deputy sheriffs and of the court; and they were only temporarily separated for their personal comfort and necessary rest and sleep through the night.

In all of the other cases cited by defendant, the jurors were not in charge of .deputy sheriffs.

In the case of State v. Craighead, 114 La. 84, 90, 38 South. 28, seven unaccepted jurors were permitted to remain with five jurors who had been accepted and sworn, and we held such irregularity to be sufficient to set aside the judgment and verdict in the cause.

The early common-law authorities pressed with .great vigor that by—

"the law of England, a jury, after the evidence given upon the issue, ought to be kept together in some convenient place, without meat or drink, fire or candle, which some books call imprisonment, and without speech with any, unless it be the bailiff, and with him only if they be agreed."

The modern English practice has been, though, that the court may adjourn from day to day, during the progress of the trial, and that the jury could be kept together during the night in charge of the officers of the court in capital cases. In America the practice has been, as to capital cases, very diverging. While the weight of authority states that such separation should not be permitted, there is a growing tendency towards relaxation of this rule; and Mr. Wharton in his book on Criminal Law (Practice) § 3305, says:

"1. Separation of the jury, in a capital case, after the committal of the case, in such a way as to enable them or either of them to be tampered with, is ground for a new trial. The authorities, however, differ as to whether (1) this ground is absolute, or (2) prima facie, subject to be rebutted by proof from the prosecution that no improper influence reached the jury, or (3) merely contingent, upon proof to be offered by the defence that a tampering really took place.

"(1) Among those holding the first view, the courts of Pennsylvania, Louisiana, Mississippi, and Tennessee, take at least, in capital cases, the most extreme position, they maintaining that

even consent of prisoner cannot, in such cases, cure a separation.

"(2) That such separation, in a capital case, is prima facie ground for a new trial, subject to be rebutted by proof from the prosecution that no improper influence reached the jury, is the position generally taken by the American courts.

"(3) There are, however, cases in which it has been held that separation of the jury is only ground for new trial when sustained by proof of tampering, the burden of which is on the defendant. It is further held that such separation is within the discretion of the judge trying the case, not subject to revision on error."

But our decisions, so far as they have been cited by defendant, do not show that we have held the mere separation of a jury during the nighttime, while the court is in recess, in two separate rooms, each room in charge of a deputy sheriff, to be such a separation as is sufficient cause for a new trial, and where the evidence shows that the jurors have not been tampered with.

In State v. Forney, 24 La. Ann. 191, where defendant was found guilty with shooting with intent to kill and murder while lying in wait, and the point was made by defendant that there was a separation of the jury, which in a capital case vitiated the verdict, we say:

"Nor do we think there was such a separation of the jury in this case as would vitiate a verdict.

"Before the jury had been completed and impaneled, and, of course, before the indictment had been read to them or any evidence adduced, one of the nine who had been sworn left the courtroom for a necessary purpose and went into an adjacent alley. He was not out of the view of the sheriff more than ten seconds. He spoke to no one. The sheriff observed that there was no one else in the alley. He returned to his seat before the trial began. In such a case we think it would be pushing technicality too far to say that the verdict should be set aside, for there is no room for any reasonable hypothesis of misconduct. In each of the cases of State v. Hornsby, 8 Rob. 554 [41 Am. Dec. 305], State v. Crosby, 4 La. Ann. 435, State v. Evans, 21 La. Ann. 321, and State v. Frank, 23 La. Ann. 213, cited by defendant, there was a real separation of the jury after the trial had begun and evidence had been taken, and there was a strong and perhaps conclusive presumption of misconduct. But in the present case we see no such reason for a new trial."

And in the case of State v. Turner et al., 25 La. Ann. 573, where the same point was being urged, we say:

"It is true that, on one of these occasions, after the jury had retired to consider their verdict, one of the jurors, accompanied by a deputy sheriff, came downstairs and went outside of the courtroom, and that the officer was called back by the judge, the juror being thus for a moment separated from the officer. We are called upon to say that this separation forces the presumption of misconduct, which entitles the defendant to a new trial. To do this we would have to impute complicity on the part of the judge, the sheriff's officer, and the juror, all combining to do some act by which the prisoners, if found guilty, would be entitled to a new trial, and thus, perhaps, escape the penalty which the law attaches to their crime, and which had been fully proved to the jury who first tried them. This we have no warrant in law for doing. We will not say that because a juror was for a moment out of the presence of the officer under whose charge he was, when it is not shown or alleged that he had any communication with any other person, and it does not appear that he had an opportunity to have had any, it necessarily establishes the presumption of misconduct, and makes it obligatory upon us to set aside the verdict. We may be willing to take the law upon this subject to be as it is laid down in Hornsby's Case, but we cannot carry it any further. We would be carrying it very much further if we set aside the verdict of the jury on this ground."

In 12 Cyc. 723, it is stated:

"Broadly speaking no merely temporary separation of the jury is sufficient to justify a reversal, if during the time of the separation they are in the charge of an officer, and he keeps them in his actual sight and hearing, or when this is not possible the circumstances are such that it is apparent that they have not been tampered with or influenced to the prejudice of defendant. It has been held in a number of cases that the mere fact that one or more of the jurors were, after their retirement and before the verdict, separated from the others, is not ground for a new trial unless it appears that defendant was prejudiced thereby."

There are cited in support of the above rule cases from Colorado, Indiana, Iowa, Kansas, Mississippi, Missouri, Nebraska, Nevada, New Mexico, North Carolina, Pennsylvania, Texas, and Virginia.

In the case of Commonwealth v. Gagle, 147 Mass. 576, 18 N. E. 417, it is held that the circumstances of the separation are to be considered in determining whether any presumption of tampering exists. A temporary separation of the jury for a short period, as where one of them stays in the room with the officer while the others are at supper, raises no presumption of prejudice. And in the case of State v. Conway, 23 Minn. 291, it is held that where the juror who is separated remains in the sight and custody of the officer, and the other facts exclude any suspicion of tampering or of the influence of the separation upon the verdict, the presumption should not be recognized. It is merely a presumption, which is subject to be rebutted by evidence.

And, where it is shown that under the direct order of the court the jury is retired for the night to two rooms in a hotel, in charge of deputy sheriffs, for the purpose of resting and sleeping, during the progress of the trial, and it affirmatively appears that the jurors were not tampered with or influenced in any way, and that the accused was not prejudiced in any manner, a motion for a new trial, based on such alleged separation and presumption, was properly overruled.

Judgment affirmed.

MONROE, J., dissents.

———

(64 South. 388.)

No. 19,936.

CITY OF SHREVEPORT v. MAROUN.

(Jan. 5, 1914. Rehearing Denied Feb, 2, 1914.)

*(Syllabus by the Court.)*

1. INTOXICATING LIQUORS (§ 30*) — REGULATION BY MUNICIPALITY—RIGHT.

The people of Caddo parish had the right to decide by vote that intoxicating liquors could not be sold in that parish. Town of Ruston v. Fountain, 118 La. 53, 42 South. 644;