(67 South. 376)

No. 20870.

STATE v. CLARY et al.

(Nov. 30, 1914. On Rehearing Feb. 8, 1915.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ☞1174 — APPEAL — GROUNDS FOR REVERSAL—MISCONDUCT OF JURY.

A verdict and sentence for manslaughter will not be reversed, where the court permitted the jury to attend a moving picture show in charge of the sheriff and several deputies, where the facts affirmatively show the absence of misconduct and prejudice. In a murder case, where the jury did not separate, a new trial will not be granted where it clearly appears that the defendant has not been enjoined or prejudiced by alleged irregularities or misconduct on the part of the jury.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3170–3178; Dec. Dig. ☞ 1174.]

2. HOMICIDE ☞342—VERDICT—HOSTILE PUBLIC SENTIMENT.

In a murder case, where, on the admitted facts, the defendants might have been convicted as charged, and the jury found them guilty of manslaughter, the verdict tends to show that the jury was not influenced by alleged hostile public sentiment against the defendants.

[Ed. Note.—For other cases, see Homicide, Cent. Dig. § 722; Dec. Dig. ☞342.]

3. CRIMINAL LAW ☞868—MISCONDUCT OF JURY—OBJECTION—TIME.

Where alleged misconduct of the jury is known to defendants or their counsel, objection should be urged before verdict.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2070; Dec. Dig ☞868.]

O'Niell, J., dissenting.

Appeal from Sixth Judicial District Court, Parish of Ouachita; Ben C. Dawkins, Judge.

Bob Clary and others were convicted of manslaughter, and appeal. Affirmed on rehearing.

Hudson, Potts, Bernstein & Sholars, of Monroe, and Dawkins & Dawkins, of Alexandria, for appellants. R. G. Pleasant, Atty. Gen., Fred M. Odom, Dist. Atty., of Bastrop, G. A. Gondran, of New Orleans (Carl H. McHenry, of Monroe, of counsel), for the State.

PROVOSTY, J. The sole point presented in this case is as to whether the jury was kept free from contact with the public and from improper influences, the case being capital.

The circumstances of the crime were of a nature to arouse strong public sentiment against the two accused. They had gone to their homes and armed themselves, one with a rifle and the other with a shotgun, and sought out the decedent, and set upon him unawares, and, while one of them was beating him on the head with the rifle, the other had shot him dead. The reputation of the accused having been already not of the best, considerable public excitement attended the trial, which lasted from the morning of Tuesday, July 14th, to some time during the day of Tuesday, July 21st; and, as we gather, the courthouse was crowded during its progress.

While it was going on, a stranger stood near the jury and had conversed with one of the jurors before his presence was discovered. The jury were marched several times to and from the hotel and to and from the picture shows along the more or less crowded sidewalks, with no precaution taken against their contact with the public, except their being accompanied by two officers. At their meals at the hotel they seem to have been allowed to converse freely with the waitresses; and the situation was such that conversation at the other tables, even in an ordinary tone of voice, could easily be heard by them. Packages and valises with no, or

simply more or less perfunctory, examination of their, contents, were allowed to be given in to them. All this, of itself, leaves the impartial mind in doubt whether the rule for the segregation and isolation of the jury was not lost sight of fatally to the verdict, in a case of this kind, when the heinousness of the crime and aroused public sentiment against the accused made a strict and careful observance of the rule doubly to be desired; but one other imprudence which we now proceed to mention leaves no doubt that the said rule was fatally departed from. The jury were taken to the picture shows on two occasions at night, and sat there in the ordinary rows of chairs with the rows in front and back of them occupied, in the obscurity which usually prevails in places of that kind. Thereby an opportunity was afforded to the public for access to them, and this is fatal to the verdict. "They were accessible; misconduct is presumed." State v. Warren, 43 La. Ann. 828, 9 South. 559; State v. Moss, 47 La. Ann. 1514, 18 South. 507. See, also, State v. Craighead, 114 La. 84, 38 South. 28.

The verdict and sentence are therefore set aside, and the case is remanded for trial according to law.

### On Rehearing.

LAND, J. The defendants were indicted for murder and convicted of manslaughter.

Counsel for the defendants admitted in his argument on rehearing that the jury was composed of intelligent and high-minded men, and that there was no separation of the jury.

The facts stated in the second paragraph of our original opinion in this case show that the verdict of manslaughter was favorable to the accused.

The third paragraph of the opinion states in general terms the defendants' numerous objections to the conduct of the jury and the bailiffs who had them in charge.

[1] The jurors were lodged and boarded at the, Monroe Hotel, and were compelled to walk to and from the courthouse, situated in the next square, and were always in charge of two or more bailiffs. They took their meals in a small room connected with the main dining room by an arched doorway. Their conversations with the waitresses had nothing to do with the case on trial, and the same may be said of all greetings and remarks between the jurors and other persons. During the long trial of eight days in the midst of July, the jurors were taken twice to picture shows with the permission of the judge below. No objection was made by defendants to the allowance of such recreation to the jurors. At neither of the shows was any communication shown to have taken place between outsiders and the jurors, except on one occasion, when the young daughter of Juror Speed told him how sorry she and her mother were for him, meaning his detention on the jury. As to packages and valises sent to certain jurors, each of them testified positively that they contained nothing but wearing apparel. A few notes sent to members of the jury were shown not to relate to the case on trial.

In State v. Oteri, 128 La. 939, 55 South. 582, Ann. Cas. 1912C, 878, this court held that a verdict and sentence would not be reversed because the court permitted the jury to attend a theatrical exhibition in charge of a bailiff, where the facts affirmatively established the absence of misconduct and prejudice.

The judge a quo in his per curiam carefully reviewed the evidence and found that the irregularities complained of in the motion for a new trial worked no injury or prejudice to the defendants.

The verdict of manslaughter tends to support the conclusion that the jury was not swayed by the alleged hostile public sentiment against the accused.

There was no separation of the jury, and

in such a case, "as a general rule, a new trial will not be granted where it clearly appears that the defendant has not been injured or prejudiced by the misconduct." See State v. Oteri, supra, 128 La. 947, 55 South. 585, Ann. Cas. 1912C, 878, citing State v. Kennedy, 8 Rob. 590, where the court said that the presumption of misconduct does not arise where the jurors have been kept together, and the means thus provided for proving the precise nature of their irregularities, from which courts may determine whether the tendency of the acts has been to influence their verdict. See, also, 12 Cyc. 717, where it is said:

"On the other hand, as a general rule, a new trial will not be granted where it clearly appears that the defendant has not been injured or prejudiced by the misconduct."

In State v. Garig, 43 La. Ann. 371, 8 South. 936, the court said:

"It is not every irregularity that will vitiate a verdict; it must appear to have resulted injuriously."

See, also, State v. Wiggins, 45 La. Ann. 416, 12 South. 630.

In the instant case we concur in the opinion of the trial judge that none of the acts of the jurors, and none of the communications made to them, had a tendency to influence their verdict.

[2] Failing to prove that any of the jurors were guilty of personal misconduct, or heard any comments unfavorable to the accused, their counsel have resorted to the argument that, in some unexplained way, the jurors, while passing along the streets or through the lobby of the hotel, or while taking their meals, or while looking at moving pictures, were inoculated with the alleged hostile sentiment entertained by the public against the defendants.

The verdict of the jury is the best answer to that argument.

The case of State v. Warren, 43 La. Ann. 828, 9 South. 559, cited in our original opinion, was one where eight of the jury were allowed to remain in the jury room, with no deputy in charge. The court said:

"They were accessible; misconduct is presumed."

In State v. Moss, 47 La. Ann. 1514, 18 South. 507, cited in the same opinion "there was at least one well-defined separation of the jury," to quote the language of the court. In State v. Craighead, 114 La. 84, 38 South. 28, also cited, five jurors who had been accepted and sworn were locked up with seven jurors unaccepted and unsworn.

[3] Defendants or their counsel must have known before verdict that the jury was being escorted through the streets, and one of the attorneys knew that, on one occasion, the jury had been taken to a moving picture show. Objections to exposing the jury to contact with the public should have been urged before verdict.

It is therefore ordered that our former decree herein be vacated, and it is now ordered that the verdict and sentence below be affirmed.

PROVOSTY, J., holds that when opportunity to communicate secretly with the jurors, so as to exercise an improper influence upon them if desired, is shown, the burden is shifted to the state to show that the opportunity was not availed of, and that this burden is not discharged by calling the jury up and asking them whether they have been improperly influenced. The influenced juror would, of course, never confess to the fact.

O'NIELL, J., dissents.