DIXON, Justice.
On the application of the defendant we-granted writs in this case to consider the effect of Furman v. Georgia[1] upon Louisiana procedural law in a murder trial.
A bill of exceptions was reservéd by defendant when the trial judge instructed a prospective juror that, since capital punishment can no longer be imposed in Louisiana, only nine of the twelve jurors need to-concur to reach a verdict, and the jury would not be sequestered during the trial.
Sequestration of the jury is required by C.Cr.P. 791 “in capital cases.”
The size of the jury and the number that must concur to reach a verdict are governed by C.Cr.P. 782, whose source is Article 7, Section 41, Louisiana Constitution of 1921: ' '
"... Cases, in which the -punishment may be at hard labor, shall be tried by a jury of five, all of whom must concur to render a verdict; cases, in which the punishment is necessarily at hard labor, by a jury of twelve, nine of whom must concur to render a verdict; cases in which the punishment may be capital, by *690 a jury of twelve, all of whom must concur to render a verdict.”
The word “capital” in criminal law ' has to do with the death penalty.[2]
Defendant observes that C.Cr.P. 878,[3] in view of the Furman case, might seem to require that we hold our murder statute (R.S. 14:30) unconstitutional, but argues that the better view would recognize that only the imposition and execution of a capital sentence has been reprobated, leaving intact the crimes .and the procedural devices applicable to cases in which the death penalty was applicable before Furman.
The State simply argues that there are no more capital cases, and since the only punishment now available for the crime of murder is life imprisonment at hard labor, the constitutional and statutory provisions (nine out of twelve jury verdict, no sequestration) applicable to non-cápital felony cases must now apply to what were formerly “capital cases.”
The provisions of Article 7, Section 41, quoted above, were taken almost verbatim from the Louisiana Constitutions of 1898, Article 116, and 1913, Article 116. The less serious offenses were triable without juries; more serious offenses were triable with five man juries (unanimous verdict), twelve man juries with nine concurring, or twelve man juries with unanimous verdict. The severity of the offense was legislatively determined and depended upon the maximum penalty which could be imposed for the offense charged.
For at least three-fourths of a century, the legislature has made provisions for procedural matters in criminal cases which depend on the classification of crimes in the Louisiana Constitution.[4] If our legislature eliminated capital punishment, but *692 remained silent with respect to procedural changes, we might be justified in adopting the reasoning of the State — that all statutory references to capital cases, capital offenses and capital punishment should be ignored. We might conclude that the legislature was aware of its laws on the subject, and chose, in effect, to repeal them tacitly.
However, it was not the legislature, but the United States Supreme Court that has held the imposition and execution of the death sentence, as now applicable in our State, to be violative of the United States Constitution. No presumption arises that any other provision of Louisiana law has been affected by the United States Supreme Court, except those having to do ■with the imposition and execution of death sentences. Nor, indeed, has the United States Supreme Court eliminated the possibility that the Louisiana legislature might enact statutes which could constitutionally impose the' death sentence, when the sentence is mandatory and cannot be applied in a discriminatory manner.
’ Although the hiatus is obvious and the situation undesirable, we conclude that we should (at least until the legislative process. has reorganized the criminal law and procedure in view of Furman) interpret Article 7, Section 41 of the Louisiana Constitution as referring to classes of crimes, and that those which the legislature-has classified as capital offenses shall be-tried by a jury of twelve, all of whom must concur to render a verdict.
Further, we adopt the same interpretation as to C.Cr.P. 791, and hold, that murder is still classified as a “capital case,” and that C.Cr.P. 791 requires the sequestration of the jury in capital cases.
For these reasons, Bill of Exceptions No. 1 has merit. Defendant’s objection should have been sustained. A mistrial is ordered and the jury is dismissed» (C.Cr.P. 775(3)).
APPENDIX
California and Colorado have adopted, the “classification” theory. People v. Anderson, 6 Cal.3d 628, 100 Cal.Rptr. 152, 493 P.2d 880 (1972); People v. District Court (Nixon and McElvray), Colo.1972, 500 P.2d 358; Contra: State v. Johnson, 1972, 61 N.J. 351, 294 A.2d 245; Ex Parte Contella, Tex.Cr.App.1972, 485 S.W.2d 910; Donaldson v. Sack, 265 So.2d 499 (Fla. 1972).
Capital offenses (capital cases, capital crimes) in Louisiana are:
R.S. 14:30 —murder
R.S. 14:42 —aggravated rape
R.S. 14:44 —aggravated kidnapping
R.S. 14:113' — treason
*694 Various provisions- made applicable to 'Capital offenses by use of the word “capital,” or by reference to “death,” in Louisiana statutory law, are as follows:
1. capital crime Art. 1, Sec. 9 (indictment by grand jury)
Art. 7, Sec. 52 (jurisdiction of juvenile courts)
2. capital case C.Cr.P. 291 (authority to conduct preliminary examinations)
C.Cr.P. 315 (authority to fix bail)
C.Cr.P. 512 (assigned counsel must have 5 years experience— "capital offense" used in the same provision)
C.Cr.P. 557 (court shall not accept unqualified guilty plea)
C.Cr.P. 578 (commencement of trial must be within 3 years of institution of prosecution)
C.Cr.P. 791 (sequestration of jurors)
C.Cr.P. 817 (qualifying verdict in capital cases)
R.S. 15:142 (added by Act 616 of 1972 — creates an indigent defender board for the 8th and 23rd judicial districts — refers to the rule that the defense counsel appointed in a capital case must have 5 years experience)
3. capital offense, Art. 1, Sec. 12 (no bail provision)
C.Cr.P. 313 (no bail provision)
C.Cr.P. 437 (grand jury shall inquire into capital offenses)
C.Cr.P. 512 (court shall appoint indigent defense counsel with 5 years experience. Also uses the phrase "capital case")
C.Cr.P. 780 (person so charged cannot waive a jury and ask for a bench trial)
C.Cr.P. 859 (grounds for arrest of judgment — prosecution not instituted by a grand jury indictment — see (8) of article)
C.Cr.P. 933 (definition of capital offense — "offense that may be punished by death")
R.S. 15:141 (as amended by Act 736 of 1972 — statute deals with indigent defender boards — provides that defense attorney appointed in capital offense must have 5 years experience — see subsections C and F of statute)
4. cases in which the punishment may be capital
Art. 7, Sec. 41
C.Cr.P. 782 (unanimous verdict of 12 man jury required)
offense which may be punished by death
C.Cr.P. 382 (grand jury indictment needed)
-crime for which the death penalty may be imposed
C.Cr.P. 571 (no time limit for the institution of prosecution)
offenses punishable by death
C.Cr.P. 799 (12 peremptory challenges available)
felony not punishable by death
C.Cr.P. 832 (indicates that a person charged with a capital offense may object to his temporary voluntary absence at the proceedings against him)
*696 BARHAM, J., dissents with written reasons.
TATE, J., concurs with BARHAM, J.’s dissent and assigns additional reasons.

. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), holding that the imposition and execution of the death penalty, where the jury has the discretion to impose the death sentence or a lesser sentence, violates provisions of the United States Constitution.

. cap'i-tal (kap'i-tal; -t’l), adj. [F., fr. L. capitalis capital (in senses 1 & 2), fr. caput head. See Chief; cf. Capital, n.]
1. Of or pertaining to the head or top. Obs.
2. Having reference to, or involving the forfeiture of, the head or life; punishable with death ; as a capital trial or verdict; specif., in Roman or Civil Law, involv■ing, or punishable by, loss of legal personality.
Many crimes that are capital among us.

Suñft.

To put to death a capital offender.

Milton.

.3. Mortal; of enmity or an enemy, deadly: fatal. Obs.
Merriam-Webster’s New International Dictionary of the English Language, Second Edition Unabridged (1950).

. “A sentence shall not be set aside on the ground that it inflicts cruel or unusual punishment • unless the statute under which it is imposed is found unconstitutional.”

. Compare C.Cr.P. 933: “Except where the context clearly indicates otherwise, as used in this Code:
“(1) ‘Offense’ includes both a felony and a misdemeanor.
“(2) ‘Capital offense’ means an offense that may be punished by death.
*692 “(3) ‘Felony’ means an offense that may be punished by death or by imprisonment at hard labor.
“ (4) ‘Misdemeanor’ means any offense other than a felony, and includes the violation of an ordinance providing a penal sanction.”