275 So.2d 396 (1973)
STATE of Louisiana
v.
John R. LUQUETTE.
No. 52695.
Supreme Court of Louisiana.
March 26, 1973.
*397 G. Wray Gill, Sr., Gordon Goodbee, Covington, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Appellant, John R. Luquette, was charged with the murder of Frank Trasher. He was tried, convicted and sentenced to death. On this appeal he assigns four alleged errors upon which he relies to set aside his conviction and sentence.
The errors assigned can be grouped into two issues. One involves the mental capacity of the accused both at the time of the commission of the offense and at the time of trial and sentence. This issue is presented by a motion to have the defendant examined at the expense of the State, a motion for appointment of a lunacy commission, a motion in arrest of judgment, and a motion for a new trial, all of which were denied. Bills of exceptions were reserved to these rulings.
The insanity issue was raised after verdict and before sentencing.
Evidence received at a hearing on these motions consisted of the testimony of appellant's mother, his wife and several acquaintances. His mother tells of the stepfather's mistreatment of appellant while he was a young boy. It was necessary she said, to send appellant to a psychiatrist for *398 treatment on several occasions at that time. She also stated that there was a history of mental instability in her family. One of her children, appellant's half-sister, committed suicide at the age of thirteen. Another son, appellant's half-brother, is mentally deranged. A letter from a psychiatrist supports her statement that in 1966 she received treatment for a nervous and mental condition, including electro-convulsive treatments. At that time he recommended hospitalization for her in Central Louisiana State Hospital.
Other relevant evidence consisted of testimony by several acquaintances of appellant to the effect that his actions were erratic or violent when he overindulged in intoxicating liquors.
Although the whereabouts of these witnesses was well-known to appellant's wife prior to trial, the question of his mental condition was never gone into with defense counsel until after his trial and conviction.
At the conclusion of the hearing the trial judge ruled as follows:
My review in my own mind of the trial, of the motions that were filed and heard prior to the trial, of the days here in court with the defendant and his lawyer and what has transpired since then, the evidence that went before that jury on the several days that it took to try this case, my conclusion for the record is that I do not have reasonable grounds to doubt his mental capacity to proceed.
On the basis of these findings, all of the motions presenting the issue of appellant's mental capacity were denied. The trial judge had the opportunity to observe the defendant's actions, demeanor and attitude prior to and during a lengthy trial. His determination of fact is entitled to great weight. And the record does not support a contrary finding for the evidence does not preponderate in favor of appellant. The trial court finding will not be disturbed on this appeal.
The law presumes that a man is sane. No absolute right to the appointment of a lunacy commission is assured by the law in every case.
The appointment of a commission to inquire into the mental condition of the accused is addressed to the sound discretion of the trial court, the test being whether, from the facts brought to the attention of the judge, he has reasonable ground to believe that the accused is insane or mentally defective to the extent that he is unable to understand the proceedings against him. Under these rules the accused bears the burden of establishing by a clear preponderance of the evidence reasonable grounds to believe that he is mentally defective. Hence the burden was on the appellant to exhibit that there was a manifest abuse of discretion by the judge. This he has not done as the testimony of his witnesses is not of such quality to inspire in the judge a reasonable basis for believing that appellant was or is insane. La.Code Crim.Proc. arts. 641-649. State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Graves, 247 La. 683, 174 So.2d 118 (1965); State v. Bessar, 213 La. 299, 34 So.2d 785 (1948); State v. Ledet, 211 La. 769, 30 So.2d 830 (1947); State v. Gunter, 208 La. 694, 23 So.2d 305 (1945); State v. Washington, 207 La. 849, 22 So.2d 193 (1945); State v. Messer, 194 La. 238, 193 So. 633 (1940); State v. Hebert, 186 La. 308, 172 So. 167 (1937); State v. Ridgeway, 178 La. 606, 152 So. 306 (1934). Appointment of a commission to inquire into appellant's mental condition was properly refused.
Since the allegation of mental incompetency lies at the foundation of the motion for a directed verdict and motion for a new trial, the finding that defendant was mentally competent during trial and at the time of the hearing makes further consideration of these motions unnecessary insofar as insanity at the time of the trial is concerned. On the question whether there *399 was sufficient evidence of insanity at the time of the commission of the offense which would warrant granting a new trial, the trial judge's ruling is correct. The evidence does not support the defense contention. La.Code Crim.Proc. art. 851-862. Moreover, the proper time to raise this issue is by a plea of insanity at the time of arraignment. La.Code Crim.Proc. art. 552.
The motion for a continuance requests time before sentencing. It is based upon the contention that sentence cannot be imposed upon an insane person and that time was required to establish the present insanity of appellant. Ample opportunity existed to establish the defense contention prior to this last minute motion. The finding that appellant had mental capacity to proceed and that he was not insane when the motion was tried makes this contention insubstantial and without merit. La.Code Crim.Proc. arts. 707-715.
Notwithstanding that the insanity issue furnishes no basis for reversal, it has been considered for the effect our views may have upon the new trial which must be granted on the next issue.
The second and final issue is understood to be a claim of error arising out of the failure of the trial judge to sequester jurors after some of them were sworn, but before the entire jury was chosen. A proper bill of exceptions was not reserved or perfected to preserve this issue for review. The State relies upon this failure to object or reserve a bill to persuade the court it should not consider this contention.
A review of the record discloses the following pertinent minute entry:
The List of Jurors now having been exhausted; the Court stated that after discussing the matter with the Jury and with counsel, and having explained that since no witnesses have been heard and the impaneling of the jury was not complete, IT IS HEREBY ORDERED that the Jury is to be at large and allowed to go home tonight. The Jury was instructed by the Court not to discuss the case and if they should be approached by anyone and in any manner, that this Court should be notified.
It is inferred that as an obvious consequence of the foregoing order the jurors already selected and sworn were allowed to go to their separate homes that night and that they were in fact separated for the night.
The quoted minute entry was discoverable by a mere inspection of the proceedings and without inspection of the evidence. It is, therefore, properly considered on appeal without the necessity of a formal bill of exceptions. La.Code Crim.Proc. art. 920(2); State v. Palmer, 251 La. 759, 206 So.2d 485 (1968); State v. Sanford, 248 La. 630, 181 So.2d 50 (1965); State v. Bankston, 159 La. 429, 105 So. 420 (1925); State v. McCrocklin, 130 La. 106, 57 So. 645 (1912); State v. Craighead, 114 La. 84, 38 So. 28 (1905).
Matters involving "impaneling of the jury" are properly considered as part of the "proceedings" as contemplated in Article 920(2) which this Court must notice on its own motion. State v. Toney, 205 La. 451, 17 So.2d 624 (1944) and the cases cited in the preceding paragraph.
The next question is: Does error occur when the minute entry discloses that an order issued permitting the jury "to be at large and allowed to go home?" Article 791 of the Code of Criminal Procedure applies. It reads:
A jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication.
In capital cases, after each juror is sworn he shall be sequestered.
In noncapital cases, the jury shall be sequestered after the court's charge, and *400 may be sequestered at any time upon order of the court.
The mandate, that in capital cases as each juror is selected and sworn he shall be sequestered, requires that jurors selected and sworn be kept with the other jurors who have been selected and sworn either in court or in charge of an officer of the court so as to be secluded from outside communication. State v. Turner, 253 La. 763, 220 So.2d 67 (1969). The purpose of the law is to keep the jurors who actually try the case from any outside influence. State v. Towns, 205 La. 530, 17 So. 2d 814 (1944).
Many years ago a rule was established by this Court designed to offer the greatest security to the accused, and at the same time to trench in no wise upon any right necessary to insure the due and proper execution of the law. State v. Hornsby, 8 Rob. 554 (La.1844). The rule is now embodied in Article 791 of the Code of Criminal Procedure. Briefly stated, the Court announced in State v. Hornsby that in capital cases the jury should not be permitted to separate after they have been sworn, either with or without the consent of the prisoner. This precaution is necessary, it was said, to protect the accused from any undue influence which may be exercised upon the members of the jury, even without their knowledge. Improper impressions may and will be made upon their minds by artful and designing men, of which they may be perfectly unconscious; neither can they shut their eyes to the expression of popular opinion. In capital cases, upon a separation, misconduct and abuse will always be presumed.
In State v. Craighead, 114 La. 84, 38 So. 28 (1905), it was recognized that it was not necessary to complain of injury resulting from separation of the jury, evidence of that fact in the record was sufficient to justify the court in taking action with reference to it. The Craighead Court held that notwithstanding that the jurors selected were guilty of no misconduct, it is sufficient to justify the setting aside of a verdict that jurors have been accessible to and have been subjected to the possibility of outside influence.
The Craighead Case moreover approved the established practice in this State, founded upon humane reasons, to be that the accused cannot prejudice his rights by affirmatively consenting to such a method of conducting his trial. Defendant ought not to be placed in the position of having to consent, or perhaps prejudice the jury by withholding consent.
The argument of counsel for the State furnishes no satisfactory answer to these propositions, and none occurs to us. Every issue raised by the facts recited in the minute entry is resolved by the law referred to. We are compelled to adhere to the law's command.
For the reasons assigned on the issue involving separation of the jury, it is ordered that the verdict and judgment appealed from be annulled, avoided, and reversed, and this case be remanded for a new trial.
BARHAM, Justice (concurring).
The insanity question may be properly raised if there is a new trial. The reversal makes the matter moot here.