284 So.2d 923 (1973)
STATE of Louisiana
v.
Samuel Murl RHYMES.
No. 53940.
Supreme Court of Louisiana.
October 29, 1973.
Rehearing Denied November 30, 1973.
Bobby L. Culpepper, Holloway, Baker, Culpepper, Brunson & Cooper, Jonesboro, Martin S. Sanders, Jr., Winnfield, for defendant-relator.
William J. Guste, Jr., Atty. Gen., LeRoy A. Hartley, Asst. Atty. Gen., Charles B. Bice, Dist. Atty., for plaintiff-respondent.
DIXON, Justice.
Defendant, Samuel Murl Rhymes, was indicted by the Winn Parish Grand Jury on June 28, 1973 for the offense of aggravated rape. R.S. 14:42. On August 10, 1973 the petitioner was arraigned, at which time he was represented by court appointed counsel and entered a plea of not guilty and not guilty by reason of insanity. On the date of the arraignment the defendant filed a motion to fix bond, which was denied. A bill of exceptions was reserved by the defendant, and an application for writs was filed with this court. In conjunction with the order granting writs the district court was directed to set bond which was fixed on September 24, 1973 in the amount of $10,000. The relator, Samuel M. Rhymes, prays that the order previously issued by this court directing the district judge to fix bail be upheld.
Article 1, § 12 of the Louisiana Constitution reads as follows:
"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. All persons shall be bailable by sufficient sureties, except the following: 1. Persons charged with a capital offense, where *924 the proof is evident or the presumption great. Persons convicted of felonies, provided that where a minimum sentence of less than five years at hard labor is actually imposed, bail shall be allowed pending appeal until final judgment."
Article 312 C.Cr.P. provides:
"A person in custody charged with the commission of an offense is entitled to be admitted to bail before conviction, except as provided in Article 313."
Article 313 C.Cr. P. provides:
"A person charged with the commission of a capital offense shall not be admitted to bail if the proof is evident or the presumption great that he is guilty of the capital offense.
"When a person charged with the commission of a capital offense makes an application for admission to bail, the judge shall hold a hearing contradictorily with the state. The burden of proof:
"(1) Prior to indictment is on the state to show that the proof is evident or the presumption great that the defendant is guilty of the capital offense.
"(2) After indictment is on the defendant to show that the proof is not evident nor the presumption great that he is guilty of the capital offense."
In 1973 the Louisiana legislature, cognizant of the judicial developments concerning capital punishment in the Federal system and in Louisiana, amended several provisions of Title 14 and of the Code of Criminal Procedure.
First, R.S. 14:27 and 14:30 were amended. Murder was defined anew, and divided into first and second degree murders. The penalty for first degree murder is death. The penalty for second degree murder is life imprisonment.
C.Cr.P. 465 provided for short form indictments for first and second degree murder; C.Cr.P. 814 makes second degree murder and attempted second degree murder responsive to a charge of first degree murder and attempted first degree murder. C.Cr.P. 557 was amended to eliminate the provision allowing a defendant to plead guilty without capital punishment in a capital case. The new article now reads:
"A court shall not receive an unqualified plea of guilty in a capital case. If a defendant makes such a plea, the court shall order a plea of not guilty entered for him."
The new legislation removed the reference to a qualified verdict from C.Cr.P. 598, and removed from the jury the power to render a qualified verdict in capital cases. The former C.Cr.P. 817 provided:
"In a capital case the jury may qualify its verdict of guilty as follows:
"(1) With the addition of the words `without capital punishment,' in which case the punishment shall be imprisonment at hard labor for life, or
"(2) With the addition of the words `without capital punishment or benefit of parole, probation, commutation or suspension of sentence,' in which case the punishment shall be imprisonment at hard labor for life without benefit of parole, probation, commutation or suspension of sentence.
"In noncapital cases, any qualification of or addition to a verdict of guilty, beyond a specification of the offense as to which the verdict is found, is without effect upon the finding."
The newly enacted C.Cr.P. 817 provides:
"Any qualification of or addition to a verdict of guilty, beyond a specification of the offense as to which the verdict is found, is without effect upon the finding."
Whether these changes effectively reinstated the death penalty in Louisiana according to Furman standards we are not called upon to decide at this time. The legislature has provided a new definition of murder, punishable by death, and has *925 left untouched the other capital crimes in Louisiana and the penalty for each, including aggravated rape. Moreover, no action was taken by the legislature on the procedural provisions (except for the change in C.Cr.P. 817) in capital cases. Many of those procedural provisions are catalogued in the appendix to State v. Holmes, 263 La. 685, 269 So.2d 207, an easy reference for legislative consideration.
In State v. Holmes we reasoned that, although a capital offense is one punishable by death (C.Cr.P. 933), the criminal procedural law employed a system of classification of crimes into capital and non-capital (as well as other division of offenses) to govern such matters as indictment, preliminary examination, bail, prescription, appointed lawyers, sequestration of juries and unanimous verdicts. Although Furman struck down the death penalty in Louisiana, we concluded that the elimination of the death penalty by the United States Supreme Court did not affect the classification system adopted by the legislature in establishing the procedures for trying these serious offenses.
Today, if the renewed death penalty is valid, we have capital offenses, and the legislature has left untouched the procedural provisions for trying capital cases. If the efforts of the legislature to reestablish the death penalty were vain, the situation is now exactly as it was in State v. Flood, 263 La. 700, 269 So.2d 212 (1972) and State v. Holmes, supra.
In a return filed in this case by the district judge, it is submitted that the matter is moot because, on receipt of the order from this court when the writ issued, the district judge fixed bond which the defendant made.
The issue as to bond might have become moot. The basic issue did not. Whether aggravated rape is a "capital" offense will determine other important procedural questions in this trial which should be answered without delay.
Therefore, we reaffirm State v. Holmes and State v. Flood, supra. The actions of the legislature since those two decisions show no intention to abandon the classification system there recognized, but rather a legislative intent to maintain the division of offenses into capital and non-capital crimes.
For these reasons, the writ is recalled and the case is remanded to the district court for further proceedings.
BARHAM, J., dissents with reasons.
TATE, J., dissents for reasons similar to those expressed in State ex rel. Harrington v. Arceneaux, 282 So.2d 137 (La.1973) and State v. Holmes, 263 La. 685, 269 So. 2d 207 (1972).
CALOGERO, J., dissents.
BARHAM, Justice (dissenting).
My first basis for dissent is stated in dissents in State v. Flood, 263 La. 700, 269 So.2d 212 (1972), and State v. Holmes, 263 La. 685, 269 So.2d 207 (1972). Simply stated, aggravated rape is no longer a capital offense in this state.
I further dissent being of the opinion that when the Legislature determined certain offenses would be punishable by death, R.S. 14:27 and R.S. 14:30, as amended in 1973, it defined the only capital offenses in this state and they are those which carry the death penalty. All other offenses do not carry the death penalty under the holding of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Holmes and Flood tried to protect procedural safeguards which formerly attached to the death penalty until the Legislature could act. The Legislature has acted. Capital punishment can not be a hybrid of some death and some non-death cases accordingly as the court is impressed with the particular offense.
I respectfully dissent.