306 So.2d 710 (1975)
STATE of Louisiana
v.
Donald Lee HUNTER.
No. 55188.
Supreme Court of Louisiana.
January 20, 1975.
Teddy W. Airhart, Jr., Airhart & Copenhaver, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
The defendant was indicted for the crime of aggravated rape. After a trial by jury he was found guilty and was sentenced to the custody of the Department of Corrections for the rest of his natural life. He has appealed relying upon four Bills of Exceptions.
We find reversible error in Bill No. 4 and thus pretermit consideration of the other bills.
This bill was reserved when the trial court denied the defendant's motion for a new trial. The motion was made on the ground that the jury was not sequestered as mandated by C.Cr.P. Art. 791:
Art. 791. Sequestration of jurors and jury
"A jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication.
"In capital cases, after each juror is sworn he shall be sequestered.
"In noncapital cases, the jury shall be sequestered after the court's charge, and may be sequestered at any time upon order of the court." (Emphasis added).
The mandatory sequestration of jurors in capital cases was explained, Justice *711 Summers the organ of this Court, in State v. Luquette, 275 So.2d 396, 400 (1973):
"Many years ago a rule was established by this Court designed to offer the greatest security to the accused, and at the same time to trench in no wise upon any right necessary to insure the due and proper execution of the law. State v. Hornsby, 8 Rob. 554 (La.1844). The rule is now embodied in Article 791 of the Code of Criminal Procedure. Briefly stated, the Court announced in State v. Hornsby that in capital cases the jury should not be permitted to separate after they have been sworn, either with or without the consent of the prisoner. This precaution is necessary, it was said, to protect the accused from any undue influence which may be exercised upon the members of the jury, even without their knowledge. Improper impressions may and will be made upon their minds by artful and designing men, of which they may be perfectly unconscious; neither can they shut their eyes to the expression of popular opinion. In capital cases, upon a separation, misconduct and abuse will always be presumed."
The holding in Luquette was that it was an error patent on the face of the record, where, as in that case, a minute entry reflected that the jury was not sequestered in a capital case, mandating a reversal of the conviction.
The instant crime occurred February 26, 1972, the indictment was returned April 3, 1972 and the trial was held in May of 1974. Although the crime of aggravated rape was a capital crime at the time of this offense, the death penalty could not be imposed because of the decision of the United States Supreme Court in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). See e. g. State v. Singleton, 263 La. 267, 268 So.2d 220 (1972).
Subsequent to that abrogation of the execution of the death sentence, this Court had occasion to review the effect of Furman upon the procedural rules provided for "capital" offenses. In State v. Holmes, 263 La. 685, 269 So.2d 207 (1972), this Court held that pending a statutory reorganization of the criminal law and procedure in view of Furman, the procedural rules mandated for crimes classified "capital" would continue to be applied. That same day State v. Flood, 263 La. 700, 269 So.2d 212 (1972) was decided. There we held, consistent with Holmes, that "those offenses classified as capital before Furman v. Georgia are still classified as capital offenses ..." 263 La. at 705, 269 So.2d at 214.
Following those decisions, writs were denied in State ex rel. Harrington v. Arceneaux, 282 So.2d 137 (La.1974), with three dissents.[1] Involved there was an application for bail in a 1972 murder which followed Furman. The court there refused to allow the applicant to make bail (see La. C.Cr.P. Art. 313).
The first occasion we had to review the problem of the procedural rules for capital crime committed prior to the 1973 legislative amendments reinstating the death penalty (the case was tried after those amendments) was in State v. Rhymes, 284 So.2d 923 (La.1973), a prosecution for aggravated rape. The question posed in that case was what effect did the 1973 legislative action have upon a capital crime committed prior to said action. The Court, again *712 with the same three justices dissenting, said there:
"... Whether aggravated rape is a `capital' offense will determine other important procedural questions in this trial which should be answered without delay.
"Therefore, we reaffirm State v. Holmes and State v. Flood, supra. The actions of the legislature since those two decisions show no intention to abandon the classification system there recognized, but rather a legislative intent to maintain the division of offenses into capital and non-capital crimes." 284 So. 2d at 925.
The State has relied on State v. Washington, 294 So.2d 793 (La.1974) in support of its position. That reliance is not well founded inasmuch as that case involved a prosecution for a second degree murder under the 1973 death penalty legislation. There we held that the legislative action redefining murder into first degree and second degree meant that second degree murder was not a capital offense and thus the special procedures for capital cases were not applicable.
The instant crime occurred prior to the 1973 amendments (which, incidentally, successfully, insofar as this Court is concerned, reinstated the death penalty for aggravated rape, see State v. Selman, 300 So.2d 467 (La.1974)). Our ruling in State v. Rhymes, supra, makes it clear that this crime is a capital offense so far as the procedural rules to be followed are concerned.
The procedural requirements governing capital cases apply to the instant prosecution for aggravated rape.
The minutes of the instant case reveal that the jury was allowed to separate at the end of each day of the trial in violation of C.Cr.P. Art. 791 which requires in capital cases that each juror be sequestered after he is sworn. The failure to sequester the jury was reversible error. See State v. Luquette, 275 So.2d 396 (La.1973) and the cases cited therein.
It is ordered that the verdict and judgment appealed from be annulled, avoided and reversed, and this case be remanded for a new trial in accordance with law.
BARHAM, J., dissents with reasons.
TATE, J., dissents. The writer is still of the view expressed in his dissent in State v. Holmes, that the crime charged was no longer "capital" at the time of the trial. This being so, no jury sequestration was required.
BARHAM, Justice (dissenting).
I respectfully dissent, being of the opinion that the verdict and judgment should be affirmed. In my opinion there is no basis for applying the procedural requirements governing capital cases to a prosecution for aggravated rape because aggravated rape is not a capital crime.
The effect of the United States Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), was to strike down the death penalty as it then existed in aggravated rape in Louisiana. This Court subsequently followed the Furman holding by repeatedly ordering trial courts to resentence to life imprisonment defendants who formerly had been sentenced to death. See, e. g., State v. Singleton, 263 La. 267, 268 So.2d 220 (1972). Effectively we rewrote the penalty provision of the rape statute to provide a life sentence. That penalty has not been legislatively changed.
State v. Holmes, 263 La. 685, 269 So.2d 207 (1972), and State v. Flood, 263 La. 700, 269 So.2d 212 (1972), relied upon by the majority in the instant case, held that those offenses classified as "capital" before Furman would continue to be so classified for purposes of procedure. However, Holmes and Flood were only intended to provide procedural rules for the interim *713 period between the decision in Furman and reorganization of the criminal and procedural laws by the State legislature. There is specific language to that effect in Holmes:
"* * * Although the hiatus is obvious and the situation undesirable, we conclude that we should (at least until the legislative process has reorganized the criminal law and procedure in view of Furman) interpret Article 7, Section 41 of the Louisiana Constitution as referring to classes of crimes, and that those which the legislature has classified as capital offenses shall be tried by a jury of twelve, all of whom must concur to render a verdict." 269 So.2d at 209. (Emphasis here and elsewhere supplied).
Although I adhere to the views expressed in my dissents in Holmes and Flood, I recognize that those cases were the law during the interim period between Furman and the subsequent legislation in 1973. However, I believe that their viability was extinguished by the legislature when it did act in accordance with Furman.
In 1973 the Louisiana legislature amended La.R.S. 14:27, La.R.S. 14:30, and La.C. Cr.P. arts. 815 and 817 in order to bring this State's law within the holding of Furman. At that time the legislature defined only one offense, first degree murder as capital; no other offenses carry the death penalty. The murder penalty for aggravated rape had been struck down by this Court in accordance with Furman; only the legislature could have revived it because the only possible method of reviving it was by legislative re-enactment of the statute. The legislature did not do so and this Court was not empowered to do so in the face of the legislature's presumed deliberate inaction.
In State v. Selman, 300 So.2d 467 (La. 1974), the majority of this Court held that the death penalty for aggravated rape had been reinstated because the legislature's amendment of La.C.Cr.P. arts. 814 and 817 removed the infirmity which caused the reversal of convictions in Furman and the subsequent State cases. I dissented in that case for the reasons stated above, i. e., I did not believe, nor do I believe, that the legislature changed the rape statute when it amended the murder statute in its 1973 session. As I stated in my dissent in Selman, it is my opinion that the legislature evidenced a clear intent to impose capital punishment on the perpetrator of a rape only when the victim of the rape is also killed. For the reasons stated in my Selman dissent, I believe that under the holding of Furman v. Georgia the imposition of the death penalty in an aggravated rape case in Louisiana is unconstitutional because our statutory scheme of responsive verdicts still permits the jury to exercise the discretionary imposition of the death penalty specifically proscribed by Furman as cruel and unusual punishment.
In my opinion, the failure to sequester the jury in this case as required by La.C. Cr.P. art. 791 in capital cases was not error because I do not consider aggravated rape to be a capital offense subject to capital punishment.
For these reasons, I respectfully dissent.
NOTES
[1] The author was one of the three dissenters in Harrington and again in the subsequent decision in State v. Rhymes, 284 So.2d 923 (1973), for the basic reason assigned in dissent in those cases and in the dissents in State v. Holmes, 263 La. 685, 269 So.2d 207 (1972) and State v. Flood, 263 La. 700, 269 So.2d 212 (1972). Thus, contrary to the author's view, the majority of this Court has held firm in its view that the capital crimes procedural classification under Louisiana statutory law was unaffected by the United States Supreme Court decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The author therefore adheres to the majority position of this Court.