325 So.2d 576 (1976)
STATE of Louisiana
v.
Jack E. LOTT.
No. 56807.
Supreme Court of Louisiana.
January 19, 1976.
*577 Darrell D. White, White & May, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Ralph Roy, James E. Boren, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
Jack E. Lott was indicted on November 15, 1972 for the crime of murder in violation of R.S. 14:30, as that statute existed in 1972. A sanity commission was appointed and the court concluded, in December of 1972, that defendant was incapable of proceeding. Defendant was incarcerated at the East Louisiana State Hospital in Jackson. On May 8, 1975, after another sanity commission had determined that defendant had the present mental capacity to proceed, he was tried and convicted of murder in a jury trial by a verdict of eleven to one. He was subsequently sentenced to life imprisonment. On appeal, he relies on seven assignments of error. We find merit in Assignments Nos. 1, 2 and 3.
Assignment No. 1 complains that defendant could not have been convicted except by a unanimous verdict. Assignment No. 2 complains of the erroneous instruction to the jury venire that the trial judge could release the defendant if the jury found him not guilty by reason of insanity. Assignment *578 No. 3 complained of the failure to sequester the jury. Each of these errors was based on the erroneous assumption that the procedural safeguards required in capital cases were not applicable to defendant.
As the voir dire commenced, the trial judge stated: "For the record, Mr. White, you are entitled to choose whether or not you wish to have a verdict which requires ten out of twelve or nine out of twelve. Which would you prefer?" Defense counsel answered, "Ten out of twelve." The State argues that this amounted to the waiver of the deficiency in the jury verdict.
A defendant may waive trial by jury in cases not capital and cases in which the punishment is not necessarily imprisonment at hard labor. C.Cr.P. 780. Before the 1974 amendment, C.Cr.P. 782 provided: "Except as provided in Article 780, trial by jury may not be waived." After the amendment of C.Cr.P. 782 by Act 25 of Extra Session of 1974, that article provided in part: "Trial by jury may be knowingly and intelligently waived by the defendant except in capital cases." The act further provided that defendants charged with offenses committed prior to December 31, 1974 shall be "tried in accordance with the jury provisions applicable at the time of the commission of the offense." Article 342 of the Code of Criminal Procedure of 1928 provided: "Whenever the offense charged in the indictment is capital, or necessarily punishable with imprisonment at hard labor, the defendant cannot waive trial by jury; in all other cases he may elect to be tried by the judge alone."
The statutory material demonstrates the clear legislative intent that a jury cannot be waived in a capital case, and that the only verdict which can convict in capital cases is a unanimous verdict of twelve jurors. In addition, in the case before us, we could not find the "waiver" to be either intelligent nor informed.
In State v. Holmes, 263 La. 685, 269 So.2d 207 (1972), a murder case, we considered the effect on our procedural law of the United States Supreme Court's decision in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), which outlawed the death penalty as then applied. In Holmes we held that Furman did not change the classification of crimes in Louisiana, in spite of the unenforceability of the death penalty, and those crimes which the legislature had classified as capital offenses must continue to be tried by a jury of twelve, all of whom must concur to render a verdict.
In Holmes, supra, we also held that, in a murder trial, C.Cr.P. 791 required the sequestration of the jury.
The defendant in the instant case was tried for a crime that the legislature had classified as capital. Therefore, he was entitled to the safeguards afforded a defendant in a capital case. See State v. Flood, 263 La. 700, 269 So.2d 212 (1972); State v. Rhymes, 284 So.2d 923 (La.1973). Rhymes was decided after the 1973 amendment of the murder statute. In State v. Luquette, 275 So.2d 396 (La.1973), we decided that a defendant could not waive the requirement, in a murder case, that the jury be sequestered.
The legislature has taken no steps to indicate that the "classification" of certain crimes as capital offenses was not an intentional, convenient and efficient legislative grouping of procedural devices to be employed in trials for offenses which the legislature had made punishable by death a penalty no longer available at the time of this trial because of action of the United States Supreme Court.
Therefore, the jury should have been sequestered and the verdict should have been unanimous to convict. Further, the trial judge was in error when he informed the jury that the defendant could be released by the court if found not guilty *579 by reason of insanity. In a capital case, the judge has no discretion; if the defendant is found not guilty by reason of insanity, he must be committed to a mental institution. C.Cr.P. 654.
Because we reverse and remand for a new trial, we will consider an issue raised on this appeal that might be raised at a second trial.
During the defendant's case in chief, his counsel propounded the following question to a lay witness:
"Q I'll state it in a different manner. Knowing Jack Lott as you do and being familiar with him and particularly around this time frame, the act that he is accused of committing on October 23, 1972, do you think he could distinguish between right and wrong . . ."
The State objected, on the ground that the lay witness was not competent to express an opinion on the defendant's sanity at the time of the offense, and, secondly, that the question, as phrased, was improper since it invaded the province of the jury.
The judge ruled that the lay witness can render an opinion as to whether the defendant was suffering from mental difficulties or not, but he would not allow the witness to voice his opinion on the ultimate issue of defendant's sanity at the time of the offense.
In State v. Swails, 226 La. 441, 76 So.2d 523 (1954), we stated the general rule as to lay opinion evidence of insanity:
"The contention is not tenable. It is well settled in this State, and by the overwhelming jurisprudence of this country, that a non-expert witness, basing his testimony on facts and circumstances known to him, may be permitted to give opinion testimony touching upon the sanity or insanity of a person whose mental condition is at issue, provided the witnesses be shown to have had ample opportunity to observe the speech, manner, habits and conduct of such person. See State v. Lyons, 113 La. 959, 37 So. 890; State v. Montgomery, 121 La. 1005, 46 So. 997; State v. Genna, 163 La. 701, 112 So. 665; State v. Madena, 165 La. 474, 115 So. 661; State v. Neu, 180 La. 545, 157 So. 105; 20 Am.Jur. Sections 852, 853, and 32 C.J.S. Evidence § 507." (76 So.2d 523, 528).
Nor can we say that the question, as phrased, is objectionable. While the ultimate determination of whether the defendant knew right from wrong is for the jury, we cannot say that it is error for the defendant to propound this question to his witness, especially since the prosecutor, on cross-examination, can certainly inquire into the witness' understanding of insanity, both as a legal and a medical issue. We agree with the general evidentiary rule that such objections as the State raised go to the weight, rather than the admissibility, of the evidence. 7 J. Wigmore, Evidence in Trials at Common Law, §§ 1933-1938 (3d ed. 1940).
Accordingly, the conviction and sentence are reversed and set aside, and the case remanded for a new trial.