350 So.2d 586 (1977)
STATE of Louisiana
v.
A. J. DAVIES.
No. 59441.
Supreme Court of Louisiana.
September 19, 1977.
Rehearing Denied October 21, 1977.
*587 James P. Bodenheimer, Bodenheimer, Jones, Klotz & Simmons, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John A. Richardson, Dist. Atty., B. Woodrow Nesbitt, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged the defendant, A. J. Davies, with attempted aggravated rape, a violation of LSA-R.S. 14:27 and 14:42. The jury returned a guilty verdict. The court sentenced him to forty-five years imprisonment at hard labor.
The defendant appeals. He relies on three assignments of error for reversal of his conviction and sentence.

ASSIGNMENT OF ERROR NO. 1
The defense complains of the court's admitting testimony which revealed a "possible burglary or assault which occurred after the attempted aggravated rape for which [he] was tried, and for which he had been charged under a separate bill of information." He alleges that such testimony was inadmissible as it was irrelevant and evidence of other crimes or misconduct for which the defendant was not on trial.[1]
We adduce the following relevant facts:
The defendant, the victim, and her friends socialized at Sonny's Night Club in the early morning hours of March 13, 1976. There, the defendant asked the victim to have sexual relations with him, but she refused.
About 3:30 a. m., when the victim and her friends left the club, the defendant ran behind them. In order to conceal themselves from the defendant, they ran into an alley. The defendant followed and entered the alley. He grabbed the victim by the neck and pulled her away. As her friends came to her aid, the defendant told them to "back off" or he "would blow [her] head off." When he spoke, he reached into the waistband of his trousers. Believing he was reaching for a gun, everyone ran.
The defendant pinned his victim against a house, and began to choke her. He told her that he had observed her previously and that he was going to "have her" that night. Further, he advised her to cooperate since she "was going to be with [him] whether she liked it or not."
The more she resisted, the more forceful he choked her. He choked her so strongly that she passed out for a few minutes. As *588 she regained her senses, the police arrived and flashed a light on the defendant. Upon seeing this light, he jumped a fence and ran through a maze of alleyways.
The defendant then went to Sonny's and next to visit a friend, Leon. About 4 a. m., he went to Jerry Ann, a former girl friend's, house. No one let him in. Jerry Ann arose when she heard the door open. She first saw the defendant when he entered her bedroom carrying the board with which she blocked her back door. Jerry Ann testified that she had not seen him since 1973. She had not invited him, and did not know why he came.
Jerry Ann and the defendant drank coffee and spoke for a few hours in her kitchen. Charles, a friend of Jerry Ann, stated that the defendant acted abnormal and that he said he had a problem.
As it approached 7 a. m., Charles told the defendant he must leave so Jerry Ann could dress for work. The defendant reacted by trying to shove Charles and Charles' sister, Patricia, into the kitchen. When he did so, Charles asked Patricia for a gun. Upon seeing the gun, the defendant said "Ladies, I wouldn't advise you to do this because I have a .25." As he spoke, he reached into his pants. Jerry Ann and Charles, fearing that he had a gun, hid themselves. Before Charles could retrieve the gun from Patricia, she shot the defendant.
He left Jerry Ann's immediately. The defendant went to another friend, Minnie's, house. Minnie called his mother, who then called the police.
About 7:30 a. m., the police apprehended him.
Evidence of flight, concealment, and attempt to avoid apprehension is relevant. It indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt. This rule applies notwithstanding that the evidence may disclose another crime. State v. Brown, La., 322 So.2d 211 (1975); State v. Graves, La., 301 So.2d 864 (1974); State v. Nelson, 261 La. 153, 259 So.2d 46 (1972). See also State v. Lane, La., 292 So.2d 711 (1974); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966); State v. Goins, 232 La. 238, 94 So.2d 244 (1957); 29 Am.Jur.2d, Evidence, §§ 280 et seq., pp. 329 et seq. A court may admit a wide range of evidence to prove flight, concealment, and attempt to avoid apprehension. State v. Nelson, supra.
In 22A C.J.S., Criminal Law, § 625A, pp. 460 et seq., the general principles are correctly summarized as follows:
"While evidence of flight is not substantive evidence of guilt, or of premeditation or deliberation, since it is as consistent with innocence as with guilt, it is universally recognized that testimony as to flight, attempted flight, or concealment after the commission of an offense, or after one is accused of crime, is relevant evidence which may be shown as a criminating circumstance, particularly where such conduct is apparently inconsistent with the idea of innocence. "* * *
"In proving flight and the attending circumstances, any facts tending to show them are relevant and admissible. "* * *
"Testimony or evidence as to the conduct and actions of accused during the period of his flight is generally relevant, and criminal conduct by accused during this period may be shown where such conduct was an inseparable part of the flight, as where the criminal activity was to secure funds to finance and accomplish further flight, and to avoid apprehension for the original crime. "* * *
"Flight,' as evidence of guilt, consists not only in the act of leaving the jurisdiction, but it also comprehends continued concealment to avoid arrest and prosecution, and in criminal law the term is defined as the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness *589 of guilt and for the purpose of evading arrest. Such consciousness and purpose is that which gives to the act of leaving its real incriminating character." [Footnotes deleted.]
The record reflects that defendant fled from the scene of the crime. His entry into the house of a third party and his resistance to leaving is evidence of his continued efforts to avoid apprehension. Thus, we hold that the evidence was admissible.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
The defense contends that the trial judge erred in denying his motion in arrest of judgment (Assignment of Error No. 2) and in sentencing him to forty-five years imprisonment (Assignment of Error No. 3).
In both assignments of error, the defendant alleges that his sentence is unlawful. He reasons as follows: the "punishment for the crime of attempt [is] based on the punishment provided for the offense attempted"[2] aggravated rape carried a mandatory death penalty;[3]Selman v. Louisiana, 428 U.S. 906, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), held Louisiana's mandatory death penalty for aggravated rape unconstitutional; therefore, as there is no valid punishment for aggravated rape, "attempted aggravated rape is not punishable under a valid statute."
Selman, supra, held our mandatory death sentence for aggravated rape violative of the Eighth and Fourteenth Amendments. However, this invalidation has no effect upon our Legislature's classification of aggravated rape as a capital crime for purposes of Louisiana law. In considering the effect of Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), on the classification of offenses, we stated:
"However, it was not the legislature, but the United States Supreme Court that has held the imposition and execution of the death sentence, as now applicable in our State, to be violative of the United States Constitution. No presumption arises that any other provision of Louisiana law has been affected by the United States Supreme Court, except those having to do with the imposition and execution of death sentences." State v. Holmes, 263 La. 685, 269 So.2d 207 (1972).
At the time of the present crime, the offense of aggravated rape was classified as a capital offense. See State v. Tyler, La., 342 So.2d 574 (1977); State v. Moore, La., 340 So.2d 1351 (1976); State v. Whatley, La., 320 So.2d 123 (1975); State v. Rhymes, La., 284 So.2d 923 (1973); State v. Holmes, supra. Thus, we may fix the sentence for attempted aggravated rape by reference to the death penalty for aggravated rape.
A court may impose a sentence of fifty years or less upon one convicted of an attempt to commit a capital offense. LSA-R.S. 14:27 D(1). As the defendant's 45-year sentence falls within the statutory limits, the sentence imposed is legal.
These assignments of error are without merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs and assigns reasons.
DIXON, J., concurs with reasons.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., concurs but disagrees with the majority's discussion relating to evidence of flight.
*590 TATE, Justice, concurring.
As to assignment of error No. 1, I respectfully concur. I do not believe that the extensive evidence of the entirely separate post-crime incident at the home of Jerry Ann Carter is relevant as evidence of flight.
As its "rebuttal" to the defendant's testimony that he had gone to the Carter home after the encounter with the rape victim and had been shot there by a person unknown, the state introduced the testimony of Ms. Carter to show that a known person, Miss Patricia Brown, had shot the defendant when he said he had a gun. This was improper rebuttal. See La.R.S. 15:494: "It is not competent to impeach a witness as to collateral facts or irrelevant matter."
The shooting incident at the Carter home is collateral fact and is irrelevant to the crime for which the accused is on trial. If relevant, it is only tenuously so as showing that he said he had a gun, thus somewhat corroborating the victim's supposition that he had a gun based upon his threat to "blow [her] head off."
Although the evidence was improperly admitted as rebuttal, I am not at the present prepared to find its admission is reversible error: the incident had little probative force as evidence of guilt of the crime charged, and its prejudicial effect is somewhat balanced by its tenuous relevance as to the issue of whether the accused attempted to use force in the crime charged by claiming the possession of a gun, a claim reiterated in the Carter incident some thirty minutes later.
DIXON, Justice (concurring).
We do not intend to leave the impression with lawyers in Louisiana that this court will accept citations from law encyclopedias as authoritative.
CALOGERO, Justice (concurring).
I agree that assignment of error number one does not have merit. Testimony concerning defendant's activity after the attempted aggravated rape for which he was tried was not evidence of another crime.
Furthermore it was relevant. Defendant's assertion at Jerry Ann's house that he had a .25 caliber weapon tended to corroborate the attempt rape victim's testimony that defendant had told her he had a gun. I am not, however, in accord with the majority's view that relevant evidence of flight in this case includes the bizarre incident at his former girl friend's house some three to four hours after commission of the crime with which he is charged.
NOTES
[1] It should be noted that the court properly admitted evidence of several previous convictions of the defendant (simple burglary, aggravated battery, carrying a concealed weapon, and aggravated assault). In addition, the defendant gave unsolicited testimony that he possessed marijuana (a violation of LSA-R.S. 40:966) and received stolen goods (a violation of LSA-R.S. 14:69).
[2] LSA-R.S. 14:27 D(1) provides:

"D. Whoever attempts to commit any crime shall be punished as follows:
"(1) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not more than fifty years;"
[3] LSA-R.S. 14:42 provided in pertinent part:

"Whoever commits the crime of aggravated rape shall be punished by death."