LEMMON, Justice,
dissenting.
The Legislature has developed special rules and procedures for capital cases.[1] These special provisions are obviously based on an understandably heightened concern that the factfinding process should be as accurate as humanly possible when the defendant is realistically exposed to the risk of the death penalty in a capital case.
A “capital” case is defined by C.Cr.P. Art. 933(2) as one in which the-defendant may be punished by death. Thus, the exposure to the possibility of being put to death is the critical factor in the classification of any case as capital. However, when the district attorney stipulates that he will not seek the death penalty (and the defendant accepts the stipulation), the defendant is no longer realistically exposed to the danger of being put to death, and the case should no longer be classified as a capital case.
When the parties in the present case jointly stipulated that the district attorney would not seek the death penalty, the compelling reasons for requiring the unanimous jury verdict (and the other special provisions pertinent only to capital cases) were no longer applicable. Therefore, the stipulation effectively removed the case from classification as a capital case.
Parties may stipulate to any procedure which does not affect the jurisdiction of the court and which is not contrary to public policy or to good morals. Since the stipulation in this case does not affect jurisdiction, the critical issue is whether the entry of such a binding stipulation by a district attorney so conflicts with the general legislative scheme of prosecutorial discretion as to be considered contrary to public policy.[2]
I do not view this exercise of discretion by a district attorney as being at odds with the general statutory and constitutional scheme of prosecutorial discretion.[3] I would therefore approve the trial court’s permitting the district attorney in this case to enter a binding stipulation and would construe the stipulation as making the case *651 a noncapital first degree murder case punishable by life imprisonment.[4]
The construction that I espouse is particularly logical in view of the statutory scheme applicable at the time of this offense.[5] The first degree murder statute applicable in this case included all specific intent killings. State v. Perkins, above. An “aggravating circumstance” (listed in C.Cr.P. Art. 905.4) was not an essential element of the state’s ease in proving the guilt of the accused. Thus, it was not until the penalty phase of the bifurcated trial, after the jury had found an accused guilty of first degree murder, that the state was required to prove the existence of a statutory aggravating circumstance as a threshold requirement for the jury’s consideration of the death penalty.[6]
The district attorney in the present case apparently believed that the evidence would not reasonably support the jury’s finding of an aggravating circumstance. The trial judge properly permitted him to stipulate that the death penalty would not be sought, without losing the option to prosecute for first degree murder. (At that time, second degree murder included only felony murders.) Yet the majority, by holding that the prosecution of this March, 1979 offense remained a capital case, effectively requires the district attorney to choose between reducing the charge to manslaughter or proceeding with a penalty hearing after obtaining a jury verdict of first degree murder.[7] It is illogical, as well as inconsistent with the general nature of a district attorney’s discretionary duty, to insist that the district attorney, in order to obtain a valid conviction of first degree murder, proceed to a penalty hearing and either attempt to prove something which in his best professional judgment he is convinced that he cannot prove or inform the jury that he cannot prove an aggravating circumstance and instruct them that they must recommend life imprisonment (with the anomalous result that a recalcitrant jury might reject that advice and recommend death, despite the evidence).[8]
This case, therefore, particularly illustrates the logic of interpreting legislative intent as vesting the district attorney with the authority and responsibility to decide *652 which homicides committed with specific intent should be tried as capital cases (in which the defendant will realistically be exposed to the death penalty).
Finally and significantly, the defendant in the present case was willing to accept the district attorney’s stipulation, in effect precluding the possibility of defendant’s being exposed to death in this trial. The defendant perhaps could have rejected the district attorney’s stipulation and insisted that he be exposed to a risk of the death penalty in order to secure the greater procedural protections surrounding capital cases, but he chose not to do so.

. Some special provisions in capital cases are that the defendant may be denied bail, C.Cr.P. Art. 313; the jury must be sequestered, C.Cr.P. Art. 791; the verdict must be unanimous, C.Cr.P. Art. 782 and La.Const. Art. I, § 17 (1974); and the sentence is determined by the jury in a special bifurcated procedure, in which the jury first determines guilt and then decides upon the sentence, C.Cr.P. Arts. 905 et seq.

. This case is distinguishable from one in which an appellate court has declared the death penalty to be unconstitutional, thereby affecting the classification of the offense for procedural purposes. See State v. Flood, 263 La. 700, 269 So.2d 212 (1972); State v. Holmes, 269 So.2d 207, 263 La. 685, (1972). Compare State v. Polk, 376 So.2d 151 (La.1979); State v. Jones, 385 So.2d 786 (La.1980). My noting of that distinction, however, does not mean that I agree with the opinions in Flood and Holmes.

. See La.Const. Art. V, § 26 (1974); C.Cr.P. Arts. 61, 558 and 691; State v. Gilmore, 332 So.2d 789 (La.1976).

. A contrary construction would interpret the scheme of prosecutorial discretion as intending to make the jury the sole authority in choosing between life and death (subject only to review by this court), when a defendant has been indicted for any crime possibly punishable by death. Such a construction would not necessarily be illogical, but I cannot believe, given the general theme of prosecutorial discretion, that the Legislature intended to require the district attorney to seek the death penalty (or at least to submit the issue of death to the jury) in every case in which a violation of the substantive offense charged in the indictment could expose the defendant to death.

. The homicide occurred on March 31, 1979, and was thus governed by the scheme adopted by the Legislature during the 1978 regular session in response to this court’s decision in State v. Payton, 361 So.2d 866 (La.1978). See Acts 1978, No. 796; State v. Perkins, 375 So.2d 1179 (La.1979).

. In Payton, above, the applicable statutes were construed to require the state to prove an aggravating circumstance as an element of the offense of first degree murder. Acts 1978, No. 797 changed that requirement. State v. Perkins, above. The statute has since been amended again to include within the definition of first degree murder only specific intent killings committed under enumerated “aggravating circumstances”. See Acts 1979, No. 74. Other specific intent killings are now included within the definition of second degree murder.

. Under the present scheme, the district attorney may simply charge the defendant with second degree murder and achieve the same result, but that option was not available at the time of this case. As noted above, second degree murder at the time only included felony murder (unintentional killing during the perpetration of certain crimes).

. It is obvious that the district attorney in this case did not believe the jury would recommend the death penalty, even if he introduced evidence at a penalty hearing which would reasonably support the finding of an aggravating circumstance. The case involved a killing in a fight resulting from jealous anger. The defendant fired two shots at the victim in a crowded bar. In his best professional judgment, the prosecutor chose not to litigate whether the facts would warrant a finding that the defendant exposed more than one person to a risk of death. C.Cr.P. Art. 905.4(d). The jury’s verdict of manslaughter confirmed that judgment.